Tutorship of Francis Hacket and another, Minors.

In the matter of the TUTORSHIP OF FRANCIS HACKET and another, children of FRANCIS HACKET, deceased.

Where the accounts of the tutor of a minor heir, presented to the Court of Probates for approval, are opposed by the latter, a co-heir may intervene in the proceedings, for the purpose of obtaining from their common tutor a legal settlement of their ancestor's estate. The cause of action is the same, and both claim in the same right. C. P. 389, 390.

A minor who, after becoming of age, has accepted the accounts of his tutor, and given him a receipt in full and discharge from all claims, may, within four years after her majority, institute a direct action against him respecting the acts of the tutorship, or oppose his discharge when applied for by him ; and she will be relieved, on proof that she acted in ignorance of her rights. C. C. 355, 356, 1815, 1841.

Where the tutor of a minor, also the tutor of the minor heirs of a former tutor of the same minor, tenders in the Court of Probates, in his double capacity, his account to his late ward after his majority, it will be no objection, on an opposition by the latter, claiming a tract of land, or its proceeds omitted in the account, and alleged by the tutor to belong to the community which existed between the former tutor and the mother of the other minors, that the judgment, if in favor of the opponent, would be in substance against the heirs of such former tutor, who are not parties to the proceedings, and that the question is one of title, not within the jurisdiction of the Probate Court. The minor heirs of the first tutor are represented by their tutor, the only person authorized by law to represent them ; and the Court of Probates is empowered to determine questions of title, arising collaterally on the trial of other matters within its jurisdiction.

A. had two children by his wife, who, after his death, married B., by whom she also had children, and B. became the tutor of the children of the first marriage. B. having died, C. was appointed tutor to the issue of both marriages, and after the majority of the children by the first husband, presented his accounts to the Court of Probates, both as their tutor, and as tutor of the minor heirs of their first tutor. On an opposition to the approval of the account made by the heirs of the first marriage, claiming the proceeds of a tract of land, included in an inventory made after the death of the wife, of the community which existed between her and her second husband, which had been adjudicated to the latter as property common between him and his children, and which, after his death, was sold as belonging to his succession, it was proved that the land belonged to the father of the opponents before his marriage. The land was claimed by the heirs of B., under an act of sale executed by A. to D., from whom they derived title. D. being sworn as a witness testified, that the land had been conveyed to him by A., but that he had never paid any part of the price, nor taken possession of the land, there being an understanding between A. and himself, that he should re-convey the land when required ; that after A's. death, in consideration of receiving back a note he had given for the price from B., he conveyed the land to B. and his wife, believing that thereby the legal title thereto would be vested in the heirs of A. The tutors excepted to the admissibility of

this evidence, on the ground that A. having been a party to the sale to D. the opponents, his heirs, cannot, any more than he could, prove its simulation, without producing a counter-letter. *Per Curiam.* If such a letter had been taken by A., as the evidence renders probable, it must have fallen into the hands of B. their tutor, and the very person who they allege attempted to defraud them. Under such circumstances they should, perhaps, be permitted to prove the simulation by parol.

As a general rule, written titles are conclusive between the parties, and they are estopped from contradicting them ; but third persons, not parties to an act, may prove its simulation by parol, or that an act purporting to be a sale, was in truth a *dation en payement* for the benefit of such third persons, and this especially where fraud is alleged.

On an opposition to an account rendered by a tutor, a witness will be allowed to prove that the tutor told him that he had sold a slave belonging to his ward for a certain sum. *Per Curiam.* The testimony does not go to make out a sale or transfer of a slave, or to affect the title to one, but to establish the receipt of money by the tutor for property disposed of by him, for which he must account.

Where the property of minor heirs has been illegally sold, though not bound by the proceedings, they may on coming of age ratify the sale, and claim the proceeds.

A tutor is not chargeable with more than five per cent interest per annum, on funds received by him for his minor. Act of 19th February, 1825.

APPEAL from the Court of Probates of West Baton Rouge, *Favrot*, J.

The pleadings and evidence in this case are accurately re-cited in the opinion delivered by

MORPHY, J. The petitioner represents that he is the dative tutor of Francis Hacket, junr., one of the two children of Francis Hacket, born of his marriage with Maria Adams, both deceased ; that before his appointment, Francis Hacket, junr. had had two tutors in succession, to wit, his mother Maria, and, after her death, James Hacket, her second husband ; that he has also been appointed tutor to the three minor children left by the late James Hacket ; and that he is now desirous of tendering to Francis Hacket, his late ward, now of full age, an account in his double capacity as his tutor, and as tutor of the minor heirs of James Hacket. Annexed to the petition is a statement or account, showing in favor of Francis Hacket, junr. a balance of $2254 13. The petition concludes by praying, that the administration of the former tutors as well as his own, may be approved, and that he may be discharged from his trust. Francis Hacket filed an answer or opposition stating in substance, that the account does not contain a correct statement of his rights ; that instead of the sum allowed

him, he is legally and justly entitled, as one of the heirs of the late Francis Hacket, to $11,761 25. The answer avers, that a tract of land of four hundred and ten superficial *arpens*, which was the separate property of the respondent's father, acquired before his marriage with Maria Adams, was erroneously included in an inventory taken on the 1st February, 1832, of the community which had existed between his mother and her second husband James Hacket : that this land was sold by Francis Hacket, on the 16th of July, 1817, to one Michael Adams, for the sum of $7000, but continued to remain in the possession of the former and his heirs, until the 21st of June, 1824, when said Michael Adams, by an authentic act, executed a sale of the premises to Maria Hacket and James Hacket, apparently for the sum of $7,500 in cash, but that in truth nothing was paid in cash by the mother of respondent, or her second husband, to the said Michael Adams, whose sole and only object in making a reconveyance of the property was to reinvest the heirs of Francis Hacket with the title to the same, and to free himself from the payment of a note of $6000 which he had given for the land, and which he appeared by the inventory, taken after Hacket's death, to owe to his estate : that notwithstanding the aforesaid sale and re-sale, the land in question has never ceased to belong to Francis Hacket and his heirs ; and that any attempt on the part of James Hacket, or of the petitioner, as the tutor of his heirs, to make said land community property of the second marriage, by reason of the re-sale executed by Michael Adams on the 21st of June, 1824, is a fraud on the rights of the respondent and his sister Elvira. The answer further sets forth, that on the death of Maria Hacket in 1832, the said tract of land, together with the slaves Betsey, and her children, Arthemise and Lise, which were also the separate property of Francis Hacket, and the slaves Barney, Mehaly, and Jane, which belonged to the first community between Francis Hacket and Maria Adams, were erroneously and unlawfully adjudicated, at the price of appraisement, to James Hacket, as property common between him and his three children, and at his death were sold, in 1839, as belonging to the succession, at the instance of the petitioner the tutor of his minor heirs. That the rights of the respondent, and his sister Elvira, to all the separate property of their father, and

to one half of the community property between their father and mother, were not in any wise affected by the family proceedings had in 1832, and that so far as the same were intended to apply to the property of their father, and to vest any title thereto in James Hacket, they are absolutely null and void.   The answer further avers that the property which rightfully belonged to Francis Hacket, and which descended to his two heirs, was sold, in 1839, for $23,522 50, one-half of which sum the respondent is entitled to claim, as he is willing to ratify the sale thus made by the petitioner, who has received the proceeds of the said sale as tutor of the heirs of James Hacket.   The answer concludes with a prayer that the account filed may be rejected, and that the respondent do recover of the petitioner the sum of $11,761 25, with interest from the 1st of February, 1832.

The issue being thus joined, Elvira Hacket intervened, and adopting as a part of her petition, the answer of her brother Francis Hacket, she represents that she has a right to intervene and demand a legal settlement of her father's estate, which would entitle her to claim and recover of the petitioner the like sum of $11,761 25, subject to a credit of such sums as she has already received from him.   She further shows, that on the 1st of May, 1839, James Hutchiss presented her a statement, showing that as one of the heirs of Francis Hacket, she was entitled to receive, in principal, only $2176,27 ; that implicitly relying upon her former tutor's averment, in his account, that her rights were shown to be such, as he represented them, by the archives of the Court of Probates, she was misled and deceived as to her real rights, and unadvisedly signed the account acknowledging its correctness ; that afterwards, to wit, on the 13th June, 1839, she was persuaded and induced by said Hutchiss to appear before a notary, and, on receiving from him the aforesaid amount, to give him an acquittance and release, all of which was done in entire ignorance of her rights as heir of Francis Hacket, and without any knowledge of the fraud practised by James Hacket to divest her and her brother of their legitimate rights ; that the said Hutchiss well knew, when he induced her to approve his account, that it was not and could not be supported by the archives of the Court of Probates ; that under such circum-

stances the acknowledgment she signed, and the discharge she granted, should not prejudice her rights, and preclude her from recovering what she is legally entitled to. Under these pleadings the parties went to trial, whereupon the Court of Probates rejected the accounts now and formerly rendered, and decreed that the tutor, James Hutchiss, should pay to the intervenor, and to the respondent, $9,033 04 cents each, after deducting therefrom the sums respectively received by each. The tutor has appealed.

*Labauve*, for the appellant. The right of Elvira Hacket to intervene in this case, must be tested by articles 389, 390, of the Code of Practice. Art. 389 declares that, " An intervention or interpleader is a demand by which a third person requires to be permitted to become a party in a suit between other persons, either by joining the plaintiff in claiming the same thing, or something connected with it, or by uniting with the defendant in resisting the claims of the plaintiff." Art. 390 provides that, " In order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit." Here, the intervenor does not join the tutor, nor the opponent; nor does she oppose both, as permitted by sect. 10 of the act of 7th April, 1826, amending the Code of Practice. Her demand is separate and independent. She claims $11,761,25 for herself; the opponent demands other $11,761,25 for himself. She neither claims the same thing, nor any thing connected with the object demanded by the opponent. The issue in the case between the original parties is, whether Hutchiss shall pay to Francis Hacket, the opponent, $11,761,25, instead of the sum stated to be due in his account. The intervenor comes in and alleges that *another* account, rendered by Hutchiss to her, was erroneous and should be so declared, and that she also should recover from Hutchiss $11,761,25 instead of the sum allowed her by the account already rendered. This intervention raises a new and distinct issue—that is, whether the account formerly rendered to her should be annulled, and a different sum paid to her. The decision of the issue between the original parties could in no manner affect her rights; and she cannot, consequently, sustain her intervention. 7 Mart. N. S. 196. She has no interest in the $11,761,25 claimed by the op-

ponent; and an interpleader cannot change the issue. 5 Mart. N. S. 501.

The court below erroneously admitted the testimony of Adams to contradict the written acts of sale by Francis Hacket to Adams in 1817, and by Adams to James Hacket in 1824. Its tendency is to destroy those acts; to divest James Hacket and his wife and their heirs, and to vest the estate in the heirs of Francis Hacket. Its admission is in violation of two settled principles; it is the admission of parol evidence, *first*, against the contents of a written act; and *secondly*, to prove title to real property. Civil Code, arts. 2255, 2256. 12 Mart. 418. The opponent and inter- venor claim as heirs of Francis Hacket, and they are like himself, bound by the act signed by him. Civil Code, art. 2233. Be- tween the parties, nothing but a counter letter can be received to contradict a written act. 19 La. 409. The sale by Adams to James Hacket and wife, in 1824, for cash, vested in the purcha- sers and their heirs, a complete title to the property. 10 La. 181. The object of Adams' testimony is to divest this title.

The wife of James Hacket, the mother of the opponent and intervenor, having died in 1832, leaving children by her two hus- bands, an inventory of all the property was made, the price of which is now claimed by the opponent and intervenor. All this property was adjudicated, at its appraised value, to James Hack- et, the surviving husband, under the advice of a family meeting, and a decree of the Court of Probates. James Hacket having subsequently died, the property was again appraised, and sold as belonging to her succession. The opponent and intervenor now attempt to ratify the last of these two sales, and to claim the price. This they have no right to do. Suppose that there had been several more of these sales, could they ratify any one at their choice?

*Elam*, contra.

MORPHY, J. Two points have been made, which, as they ap- ply only to the intervening party, we will first consider. It is said, that Elvira Hacket was improperly permitted to intervene in this suit, as her demand is a separate and independent one; that she does not claim the same thing as Francis Hacket or any thing connected with it; that she claims for herself the same sum of

money, to be sure, as he does, but that there is not, between the two demands, that identity, or connection, contemplated by article 389 of the Code of Practice. We. think otherwise. Elvira Hacket seeks to join her brother and co-heir, in order to demand from the same person a legal settlement of their common father's estate. The thing which both claim is the same, and the grounds on which it is claimed are the same. Having a similar cause of action, and claiming in the same right, nothing could have prevented her from joining in the action when originally brought; if so, why should she not be permitted to unite her efforts to those of her co-heir, in the prosecution of their common claims against the plaintiff? We can see no good reason why it should not be so, and we believe that this case is precisely one of those provided for by the Code of Practice, Arts. 389, 390.

It is next urged, that Elvira Hacket is estopped from setting up the same claims as her co-heir, because, in 1839, she accepted her tutor's account after becoming of age, and gave him a full receipt and discharge for all claims she had against him, as well as against the estate of James Hacket her former tutor; and that by so doing she has ratified the adjudication made to James Hacket, in 1832. To this the interpleader answers, that these receipts and acquittances were the result of error on her part, created by the false representations and assertions made to her by her tutor, in the very account she accepted. We are not generally disposed to listen to parties who seek to annul contracts, deliberately entered into, on the score of error, except in cases where such error is clearly made to appear. The account rendered in 1839, states the sum of $2528 59, as being that coming to Elvira from the estate of her father and mother, and refers for its correctness to a settlement and liquidation of their estates, which, it is averred, had been made in the Court of Probates by James Hacket, her former tutor, on the 20th January, 1832. It appears that no such settlement of these estates has ever taken place; nor has any attempt been made to show, on what basis this account was rested. If its correctness cannot be supported by the archives of the Court of Probates to which it refers, and if, on the supposed truth of such reference, it was accepted by the interpleader, it is clear that she was deceived, and acted in error.

She must have supposed that the settlement and liquidation spoken of, had been made contradictorily with her under-tutor, more experienced than herself, and whose duty it was to see her rights properly stated, and correctly adjusted. She was a minor at the time of the adjudication made to James Hacket ; and nothing in the evidence induces the suspicion, that when she signed the account she had the least knowledge of her rights to any part of the property thus adjudicated, and intended to abandon them. On the contrary ; all the circumstances of the case fully satisfy us, that she acted throughout in entire ignorance of her rights, and that she should not be concluded by the acquittance and discharge thus unadvisedly signed, especially when they are opposed to her by the very party who led her into error. Civil Code, arts. 1815, 1841. 10 Peters' Rep. 735. It is not pretended that she is not within the four years during which a minor, after arriving at the age of majority, can institute a direct action against his tutor respecting the acts of the tutorship ; and it may be added, that the settlement or receipt relied on are not, perhaps, in such strict accordance with the requirements of law, as to be binding on her. Civil Code, arts. 355, 356.

Before answering to the merits, the petitioner excepted to the reconventional demand and intervention set up by the heirs of Francis Hacket ; on the ground, that a judgment allowing their claims would in substance be a judgment against the heirs and representatives of James Hacket, when they have not been made parties to this suit ; and moreover, that the Court of Probates would be made to try questions of title between the children of the two marriages, when it is without jurisdiction to try such issues. The judge below rightfully overruled these exceptions. The plaintiff is now rendering an account to the children of Francis Hacket, not only of his own tutorship, but also of the tutorship of James Hacket, their former tutor, whose minor heirs he represents ; they are therefore in court, and their rights are defended by the person alone authorized by law to stand in judgment for them. As to the question of title, it must necessarily be decided by the inferior court, which is called upon to determine what proportion of the funds, in the hands of the petitioner, is coming to the children of the first marriage, and what claims the latter have

against their former tutor, James Hacket, for the property they had in his possession, or of which, they alleged he attempted to divest them, by causing it to be adjudicated to himself.   We have uniformly held that the Court of Probates can try questions of title, when they arise collaterally in the determination of other matters within its jurisdiction.   5 Mart. N. S. 214.   6 Ib. N. S. 304.   8 La. 463 ; and see case of *Babin* v. *Nolan,* just decided, ante, p. 278.

On the merits, the oral and documentary evidence in the record fully establishes, that the land and slaves, the proceeds of which are claimed by the heirs of Francis Hacket, belonged to their father before his marriage with Maria Adams.   In relation to the land of 410 *arpens,* it has been shown that, instead of the price of $7500, mentioned in the sale of the 21st of June, 1824, as having been paid, in cash, to Michael Adams by James Hacket and his wife, the only consideration obtained was the return of a note of the vendor for $6000, which he had executed to Francis Hacket, when the latter sold him the same land on the 16th of July, 1817 ; that Adams never made the cash payment of $1000 mentioned in this last sale, and never took possession of the land, which always remained in the occupancy of Francis Hacket, between whom, and Adams, there was an understanding, that the land should be re-conveyed whenever Hacket should require it ; that after the death of the latter, in order to free himself from the liability he was seemingly under, Michael Adams reconveyed the land to Maria Hacket and James Hacket, and received back his note of $6000, inventoried as due to Hacket's estate, believing, as the witness says, that thereby the legal title to the land would be reinvested in the heirs of Francis Hacket.   But these facts have been stated by Michael Adams himself, whose testimony, taken under a commission, was objected to ; and the bill of exceptions taken to the opinion of the court admitting it, presents one of the difficulties of the case.   We believe, however, that the judge did not err.   It is said that Francis Hacket, the father of Francis and Elvira Hacket, having been a party to the sale of 1817, they cannot, any more than he could, prove its simulation without producing a counter letter.   If one was taken by their father, as the evidence renders probable, it must have fallen into the hands of

James Hacket their tutor and step-father, the very person who, they allege, attempted to defraud them of their property by taking a sale of it in his own name in 1824, when a reinvestiture of the title in them, as heirs of Francis Hacket, was intended by the vendor. Under such circumstances, perhaps, they should be viewed in the light of third parties, and be permitted to prove the simulation by parol, especially ; when the witness offered is the other party to the sale, in a contest with whom they could prove the simulation by propounding to him interrogatories to be answered under oath. But be this as it may, the appellees were not parties to the sale of the 21st of June, 1824. The general rule certainly is, that written titles form full and conclusive proof between the parties, and that they are estopped from contradicting them ; but the exception is equally certain, that persons not parties to an act, may prove its simulation by parol, or may prove, as in the present case, that the act, although purporting to be a sale, was in truth a *dation en payement,* made for the benefit of such third persons, and the exception holds especially where fraud is alleged. *De la Houssaye* v. *De la Houssaye et al.,* 7 Mart. N. S. 203. *Prudence* v. *Bermodi and others,* 1 La. 240. *Badon* v. *Badon,* 6 La. 258. *McCarty* v. *Bond's Administrator,* 9 La. 356. If by the re-sale executed by Adams, this land was really given in payment to the heirs of Francis Hacket, for a debt due to their father, they have, we apprehend, the same right of ratifying the transaction by claiming the land, as minors, who on arriving to the age of majority, can ratify sales made of their property, by claiming the proceeds. 6 Mart. N. S. 21. 2 Ib. N. S. 614.

Another bill of exceptions was taken to the admission of a witness to prove that James Hacket told him that he had sold the negro girl Lise for $500 or $600. The judge did not err. The testimony does not go to make out a sale or transfer of a slave, or affect the title to one, but to prove the receipt of a sum of money by James Hacket, for property disposed of by him, and for which he must account.

In relation to the family proceedings had in 1832, and those under which all the property found in the estate of James Hacket was sold, it is clear, that the rights of the appellees to the separate property of their father remained unaffected by them. On

neither occasion were they made parties to the proceedings, which were exclusively conducted on behalf, and for the use of the minors of the second marriage. But although the heirs of Francis Hacket are not bound by such proceedings, they have the undoubted right of ratifying the sale thus made of their property, and of claiming its proceeds. 2 Mart. N. S. 614. 5 Ib. N. S. 625. 2 La. 519.

The manner in which the Probate Judge has settled the rights and claims of the appellees, appears to us substantially correct; but he has, we think, improperly allowed them interest, at the rate of ten per cent per annum, from the maturity of the several instalments of the price their land sold for. The tutor is certainly accountable for whatever he receives for his minor, both capital and interest; but from the moment the funds reach his hands, he is not chargeable with more than five per cent per annum. Acts of 1825, p. 198. None of the children of the slave *Betsey* fell into the community, as contended by the appellant's counsel. From their ages as shown by the record, Lise, one of them, was born before the marriage of Francis Hacket, and the two others, Arthemise and Nathan, after his death.

It is therefore ordered, that the judgment of the Court of Probates be so amended, as to allow the appellees only five per cent per annum interest, instead of ten, on the sums, and from the periods, therein mentioned; and that it be affirmed in all other respects; the appellees to pay the costs of this appeal.