(68 South. 626)

No. 20915.

## BECKER v. HAMPTON.

(April 12, 1915. Rehearing Denied May 24, 1915.)

*(Syllabus by the Court.)*

1. EVIDENCE ☞419—PAROL EVIDENCE—CONSIDERATION OF DEED.

An allegation in a petition or answer that a deed purporting to be a sale for cash with the right of redemption was made to secure an existing debt, and that the purpose of making it in the form of a sale was to defeat the homestead exemption, is an allegation that the contract was made in fraudum legis, and permits the introduction of parol evidence to prove the true consideration and motive of the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912–1928; Dec. Dig. ☞419.]

2. HOMESTEAD ☞117—EXEMPTION—WAIVER.

The exemption from seizure of the homestead is a law of public policy. The constitutional prohibition that a married man shall not waive the homestead exemption without the concurrence of his wife cannot be obviated by disguising an act of mortgage in the form of a sale with the right of redemption.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 191–202; Dec. Dig. ☞117.]

Appeal from Twenty-First Judicial District Court, Parish of Iberville; Calvin K. Schwing, Judge.

Action by Nathan Becker against Wiley Hampton. Judgment for plaintiff, and defendant appeals. Reversed.

Borron & Wilbert, of Plaquemine, for appellant. Guion, Lambremont & Hebert, of New Orleans, for appellee.

O'NIELL, J. The plaintiff sued to be recognized as owner and put into possession of a tract of 30 acres of land described in an authentic act of sale by the defendant to the plaintiff, dated the 26th of November, 1912.

The deed, annexed to and made part of the petition, recites that the price was $2,665.57 "cash in hand paid," and contains the stipulation that the vendor reserved the right to repurchase the property, free of incumbrances, by returning the price with the taxes paid by his vendee at any time before the 1st of January, 1914. The purchaser assumed the payment of all taxes due on the property.

The plaintiff alleged in his petition that the price paid exceeded the value of the property; "which price," it is alleged, "included the privilege granted to the said Wiley Hampton by petitioner of using the property until January 1, 1914." It was alleged that the defendant had failed to avail himself of his right of redemption, and that, taking advantage of the right of occupancy granted to him by the plaintiff, he refused to surrender possession of the premises, and announced his intention to contest the plaintiff's title.

In his answer the defendant denied that the price stated in the act, or any sum whatever, was paid to him in cash at the time he signed the deed, and averred that the transaction was a mere subterfuge or scheme resorted to by the plaintiff in an effort to defeat the homestead exemption and obtain security for an existing indebtedness. He alleged that the property was worth $3,000 at the time of the transaction; that the plaintiff held two notes of $700 each, dated the 7th of January, 1908, secured by a mortgage on the homestead, executed by the defendant in the form of a sale and purchase to and from one Gus Weill; that Gus Weill had previously held a redemption sale of the homestead to secure an ordinary debt of $1,200; that the two mortgage notes of $700 were never surrendered or canceled by the plaintiff, but were subsequently hypothecated by him to secure his debt. The defendant alleged that, after acquiring the two mortgage notes from Gus Weill, the plaintiff sold goods and made advances to the defendant to enable him to cultivate his crops during the years 1911 and 1912, which were delivered to the plaintiff; that the plaintiff then informed

him that there was a balance due after giving credit for the crops, and threatened to foreclose the mortgage unless he (defendant) would give. security against the homestead exemption; and that he (defendant) signed the instrument, purporting to be a sale with the right of redemption, under the influence of the plaintiff's threats and in fear of. losing his homestead. He alleged that he had a family dependent upon him for support; that they resided upon the property in contest; and that it was and is his homestead bona fide owned and occupied as such. He denied that his possession was founded upon a right of occupancy granted to him by the plaintiff, and alleged that it was and is based upon his continued ownership of the property as his homestead; that his wife had not waived, relinquished, nor renounced the homestead rights or exemption granted by the Constitution of this state. He alleged that he was an ignorant old colored man, did not know the difference between a mortgage and a redemption sale, did not intend to part with his ownership of the property, and did not understand that he was disposing of his homestead.

When the defendant attempted to prove by parol evidence that no portion of the alleged price was paid in cash, and proposed to show that the true consideration was an existing debt, and that the real purpose of the transaction was to secure the payment of that debt, the plaintiff's counsel urged the objection that the defendant had not alleged error nor fraud, and that parol evidence was not admissible to prove that what was in terms a sale with the right of redemption was in fact a mortgage or an antichresis. Without ruling on the objection, the trial judge said he thought it would expedite matters to admit the evidence "in order that the appellate court might have it before it, should it deem proper to consider same." From which expression we assume that the learned district judge did not consider the evidence admissible, but admitted it into the record only for the benefit of this court. It was then agreed by and between the counsel for the plaintiff and defendant that the same objection should apply to all evidence of the same character. It does not appear that a ruling was ever made upon the admissibility of the evidence to show the true consideration and purpose of the transaction. After hearing the evidence the district court rendered judgment in favor of the plaintiff, declaring him the owner of the property, and ordering the defendant evicted therefrom. The defendant has appealed.

## Opinion.

[1] The plaintiff relies entirely upon the proposition urged in his objection that oral evidence was not admissible to contradict the recitals of the authentic act or to show the true consideration and motive of the transaction, without an allegation of fraud or error, and he contends that the defendant's allegations are insufficient in this respect. His learned counsel cite the decisions in Re Hackett, 4 Rob. 291, Parmer v. Mangham, 31 La. Ann. 348, Mulhaupt v. Youree, 35 La. Ann. 1052, Crozier v. Ragan, 38 La. Ann. 154, Franklin v. Sewall, 110 La. 292, 34 South. 448, and Jackson Brewing Co. v. Wagner, 117 La. 878, 43 South. 356, in support of their contention.

The first case cited, Tutorship of Hackett, 4 Rob. 290, merely announces the doctrine that, "as a general rule, written titles are conclusive between the parties, and they are estopped from contradicting them," but that third persons not parties to an act may prove its simulation by parol evidence. That doctrine is contained in our Civil Code, but it has only a very general application here.

The second case cited, Parmer v. Mangham, 31 La. Ann. 348, does not support the plaintiff's objection. On the contrary, it is

against his contention as to the effect of the evidence on the merits of this case. The syllabus is:

"A debtor may validly convey his immovable property to his creditor in the form of a sale in order to secure the creditor, when the value of the property is not in excess of the debt due, reserving to himself the right to redeem within a certain period. The continued possession of the property by the debtor in such a case does not make the transaction a fraudulent simulation or necessarily void. In such a transaction the conveyance, although in the form of a sale, does not vest the ownership of the property in the creditor, but may give him a right to be paid by priority out of its proceeds."

The third case cited by the plaintiff's counsel, Mulhaupt v. Youree, 35 La. Ann. 1052, does not sustain his contention. What was there decided is stated in the syllabus thus:

"The burden is on the vendor, in a sale with the pact of redemption, to prove that the contract was one of mortgage or of antichresis, when possession was given to the purchaser.
"Written evidence alone is admissible between the parties, when fraud or error is not alleged."

In the present case, however, fraud and error are alleged. The foregoing statement, that the burden is on the vendor, in a sale with the right of redemption, to prove that the contract was a mortgage or an antichresis, when possession was given to the purchaser, leaves the inference that the burden of proof is not on the vendor, that the act is presumed to be a pignorative contract, if possession was not given to the purchaser. It is not necessary to go that far with the doctrine—and we do not express that opinion—in the present case, because the vendor has borne the burden of proof, and the only question before us is whether the evidence was admissible.

The next decision relied upon by the plaintiff's counsel, Crozier v. Ragan, 38 La. Ann. 154, does not touch upon the question of the admissibility of oral testimony. It was proven by the defendant's answers to interrogatories that the act of sale in contest was intended merely to secure a debt; and the court held:

"The conveyance of property in the form of a sale does not vest the ownership in the apparent buyer if the deed was really intended by both parties to be a mortgage."

The decision in the fifth case cited by plaintiff's counsel, Franklin v. Sewall, 110 La. 292, 34 South. 448, is also rather unfavorable to his position. The court refused to hold that the act of sale was intended to be an act of mortgage or a security transaction, because the oral testimony was conflicting, not because it was inadmissible under the pleadings. On the contrary, it was said in the first paragraph of the opinion:

"There can be no question that, if the deed was not an absolute conveyance of the title, and defendant accepted it as security and a mortgage, the one who grants can, in equity, prove the fact by parol." ·

The next and last case relied upon by the plaintiff, Jackson Brewing Co. v. Wagner, 117 La. 875, 43 South. 356, is authority only for the doctrine that the parties to an authentic act cannot contradict its recitals except on allegations of error or fraud. It was decided, however, in Stewart v. Sutton, 48 La. Ann. 1073, 20 South. 283, that the allegation that a sale and resale was in reality only a mortgage disguised as two sales to get rid of the homestead exemption was an allegation that the contract was made in fraudum legis, and that, under such allegation of fraud, oral evidence was admissible to prove the true intention of the parties and the purpose of the act.

There is an allegation in the plaintiff's petition which, under the authorities relied upon by his counsel, made oral evidence admissible, even if it would have been otherwise inadmissible, to prove the true consideration and purpose of the act. We refer to the allegation that the sale was made for and in consideration of the price and sum of $2,-665.57 "cash in hand paid, which price included the privilege granted to the said Wiley Hampton by [your] petitioner of using the property until January 1, 1914." The

contract did not provide that Wiley Hampton should have the use or possession of the property until the 1st of January, 1914; but it contained the stipulation that he should have the right to redeem the property by returning the price together with the taxes paid up to that date. The plaintiff had to answer the allegation regarding his possession, and he had a right to allege and prove, as he did, that his possession of the property continued as that of the owner, and was not founded upon any special privilege granted to him by the plaintiff. The plaintiff's allegation that the price paid by him included the privilege granted to the defendant to use the property until the 1st of January, 1914, does not convey a very clear meaning. It cannot mean that the plaintiff included in the price paid to the defendant a consideration for giving the defendant the use of the property for more than a year. Neither party has offered any explanation of this. But, since the plaintiff has admitted that the true consideration was a debt due to him by the defendant, we assume that the plaintiff charged the defendant something for his use and occupancy of the premises to January 1, 1914, and included the amount so charged in the pretended purchase price.

Having disposed of the question of admissibility of the defendant's evidence, the case presents no difficulties on its merits. Although the plaintiff first testified that he had taken possession of the premises, he admitted on cross-examination that he had not done anything that could be construed as going into possession or even a pretense of taking possession. He also admitted that the consideration was not paid in cash, but consisted of a debt due for advances and the two notes of $700 each, which debt, the plaintiff testified, amounted to about $2,000 more than the value of the property. In this statement the plaintiff underestimated the value of the property; he puts it about $1,000 lower than

the lowest estimate of any of his witnesses, and about $2,400 below the value stated by the defendant's witnesses. However, it appears that the plaintiff is an intelligent business man, and it is not likely that he would have paid $2,665.57 for property which he valued at only $665.57, unless he had some ulterior motive, or was paying for it with a bad debt. Our conclusion is that the motive of the transaction was to defeat the homestead exemption which the Constitution gave to the defendant, who had a wife and two little grandchildren dependent upon him for support, and that the debt was of less value to the plaintiff than the property, in his estimation, on account of the homestead exemption.

The plaintiff did not surrender or cancel the two mortgage notes, representing nearly two-thirds of the consideration for this transaction. On the contrary, he pledged the notes to secure the payment of a debt which he owed to a bank, and our understanding of his testimony is that, although the notes were presented at the trial, they remained even then hypothecated to the bank. When asked whether he had returned the notes to the defendant, he replied: "I could not give them as the Bank of White Castle held them." He said the bank had given them to his attorney about two months before the trial, that they were pledged to secure his debt, and, when asked if the bank had not held them until long after the sale, he replied: "Up to now; yes, sir."

It is unnecessary to give a review of all the evidence in this case. Every material allegation in the defendant's answer was proven, and none was seriously disputed, except as to the value of the property. Our conclusion is that it was not worth more than the price stated in the deed.

On the merits of this case, the plaintiff's counsel refer to only two decisions to sustain his demand, the case of Franklin v. Sewall,

above quoted, and that of Marbury v. Colbert, 105 La. 467, 29 South. 871, the syllabus of which latter case is:

"Redeemable sales of immovable property, unaccompanied by delivery of the thing sold, will be considered, as between the parties, in the absence of evidence to the contrary, as mere contracts of security, and the vendee out of possession may take this position equally with the vendor.

"A sale which stipulates the equity of redemption—vente à réméré—passes title to the purchaser, but to this end it is necessary that the vendee should give a real and reasonably adequate consideration, and take actual possession of the property, or else that such explanation be forthcoming, when required, of the continued possession of the vendor, as excludes the idea of his still existing ownership."

Applying the doctrine above quoted to the facts of this case, in which the plaintiff offers no explanation of the defendant's remaining in possession of the property, compels us to reverse the judgment appealed from.

[2] The exemption of the homestead from seizure is a law of public policy in our Constitution. Article 246 requires the concurrence of the wife to enable a married man to waive his homestead exemption. If the constitutional requirements could be obviated by disguising an act of mortgage in the form of a sale with the right of redemption, these provisions enacted for the protection of the dependents of every head of a family might as well have been omitted from the Constitution.

It was held in two recent decisions that, where security is given for an ordinary debt in the form of a sale and resale to create a vendor's lien and defeat the homestead exemption, the holder of the mortgage notes had no better security than the special mortgage, even though he purchased the notes in good faith before maturity. Carroll v. Magee, 120 La. 626, 45 South. 528; Underwood v. Flosheim Bros. Dry Goods Co., 129 La. 450, 56 South. 364. In principle there is no difference between a mortgage given in the form of a sale and resale and a security transaction in the form of a sale with the right of redemption.

The judgment appealed from is annulled and reversed, and it is now ordered that the plaintiff's demand be rejected, and his suit dismissed, reserving to him whatever mortgage rights he acquired by the deed from the defendant. The costs in both courts are to be borne by the plaintiff, appellee.