## HANKS v. ALEXANDER et al. *
### No. 4802.

Court of Appeal of Louisiana. Second Circuit.

Dec. 5, 1934.

For former opinion, see 154 So. 374.

Scarborough & Barham, of Ruston, for appellant.

Elder & Elder, of Ruston, and Robert J. O'Neal, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff is the daughter of W. R. Alexander and the sister of R. C. Alexander, residents of Lincoln parish, La. Her mother having died, she alleges that on January 28, 1927, her father was duly appointed tutor to her and that R. C. Alexander was appointed her undertutor, at which time, or soon thereafter, her said tutor had in his hands $2,549.-80 in cash, belonging to petitioner, which she inherited from her deceased mother; that said amount was deposited by her father in a bank on time at 4 per cent. interest per annum; that in October, 1928, her said undertutor, with the consent of her father, took her to his home and thereafter "assumed control and dominion over the person of petitioner and had the personal care of her and superintended her education"; and that he continued to act in the capacity and perform the duties towards her and her affairs as though he were in fact her tutor, until a pretended settlement was made with her on October 5, 1932. She further alleges that during the time she lived with R. C. Alexander, and while she was still a minor, he had her sign promissory notes on various dates and

*Rehearing denied January 9, 1935.

for various amounts, ranging from $26 to $265.84, for alleged funds advanced to her by him to pay for boarding, clothing, and education; that during the year 1931 or 1932 her father had the time deposit certificate for her money changed from his name, as payee, to hers, and that on October 5, 1932, R. C. Alexander approached her about settling the notes above mentioned, held by the Dubach State Bank, requesting that she get into his car and go with him to the bank for that purpose, which she acceded to; that at his request she indorsed the time deposit certificate, which then, with interest, amounted to $2,991.80, and the bank deducted therefrom the full amount of the aforesaid notes of hers, which, with interest, aggregated $1,175.58. These were marked paid and delivered to her. She was then credited with $1,816.22. At this time no final account had been filed by her tutor.

She further alleges that R. C. Alexander, for the years 1929, 1930, 1932, charged her with $618.20 in excess of the revenues from the estate for that period; he maintaining that such was done to cover cost of food, clothing, and education; and that he charged her 8 per cent. interest when her own money was drawing only 4 per cent. As to R. C. Alexander's responsibility to her for his allegedly wrongful handling of her affairs while she lived in his home, she alleges:

"That R. C. Alexander, under-tutor, assumed the duties and office of tutor to your petitioner and that he is therefore subject to the responsibilities and subject to the same law as a tutor."

She additionally alleges that W. R. Alexander, tutor, on July 22, 1933, filed a final account of his stewardship, wherein he states that she received from him $2,991.80, which represented in full the amount due her from her mother's succession, principal and interest, but that this is not true as she only received $1,816.22 and that R. C. Alexander got the balance as hereinabove described; that her tutor could not lawfully delegate his duties as tutor to her undertutor, and that under the law he is responsible and bound for the acts of said undertutor; that the settlement between herself and R. C. Alexander, while acting for her tutor, is null and void for the reason that no final account at the time had been filed by her tutor covering his administration of her estate; and that the final account which was subsequently filed by her said tutor should not be approved and homologated until he and R. C. Alexander, undertutor, account to her for the alleged sums expended on her in excess of her annual revenues.

Plaintiff primarily sues the two Alexanders for $768.59, representing the difference between four years' interest on the money she had in bank and the amount of $1,175.58 deducted from her time deposit certificate to pay her notes held by the bank in Dubach. In the alternative, she avers that should she be adjudged not entitled to recover on her primary demand; that in that event she should recover of R. C. Alexander the $1,175.-58 retained by the Dubach State Bank to pay her notes for the reason that he told her that said notes would have to be paid in full before she could get the funds from her mother's succession, which was false; and that acting in error of fact and law, she assented to said notes being paid from her own funds in order to secure possession of the amount due her from her mother's estate.

In the alternative, secondly, she avers that R. C. Alexander is indebted unto her to the extent of $1,175.58, because he practiced a legal fraud upon her and deprived her of said sum, in the following manner, viz.:

"That during the month of October, 1928 R. C. Alexander, under-tutor, knowing that petitioner was a minor and would come into possession of approximately $3,000.00 at her majority, went to the home of your petitioner and obtained the consent of her tutor and other members of her family, to allow him to take your petitioner to his home to live, under the false and fraudulent representation, at the time, that no charges whatever would be made against petitioner; that during the month of October, 1928, petitioner was carried by R. C. Alexander, under-tutor, to the home of R. C. Alexander, under-tutor, and there placed under complete control and dominion of said R. C. Alexander; that during the time petitioner lived with R. C. Alexander, under-tutor, and while she was a minor, was forced to sign the notes set out and described in the seventh paragraph of this petition; that for the purpose of hiding and keeping secret his fraudulent scheme to finally come into possession of petitioner's funds said R. C. Alexander would not allow petitioner to visit the immediate members of her family except at long intervals and when she was allowed to visit her people she was instructed by her under-tutor and brother not to discuss, or mention, the matter of the notes she had signed nor her schooling; that said R. C. Alexander by his false representations lead your petitioner to believe that her other brothers and sisters didn't love or care

anything about her and not to place any confidence in what they might have to say to her and that this was done to hide and keep secret the fraudulent scheme of said R. C. Alexander; that said R. C. Alexander continually informed petitioner and led her to believe that he was the only one that she could really trust; that the said R. C. Alexander exercised complete dominion over the person of your petitioner and told her when to do, what to do, what not to do and what to expect if she didn't do as he said; that said R. C. Alexander knowing that the said time certificate deposit had been changed to read payable to petitioner, alone, instructed petitioner not to make this fact known to her other brothers and sisters; that said R. C. Alexander discouraged your petitioner from keeping an account of amounts advanced to her by him for her schooling for the purpose of keeping from your petitioner the amount actually advanced to her; that on the date of October 5th, 1932, said R. C. Alexander came to the home of your petitioner, when he had good reason to know that petitioner's husband was not at home, and told her to get ready and go to town with him for a final settlement of her mother's succession; that petitioner did go to town with her under-tutor, to the Dubach State Bank and was instructed to endorse the time certificate deposit for $2,091.80, which she did and thereupon she was given credit on her checking account in the amount of $1,816.22 and her under-tutor credit for the balance, namely $1,175.58; that no explanation of her rights was made to her by anyone; that she was fraudulently kept in ignorance of her rights by her under-tutor when it was his duty to speak; that no accounting had been rendered to her and that her under-tutor had failed to comply with the oath taken by him as her under-tutor."

W. R. Alexander first moved to have plaintiff amend her petition so as to disclose whether she was of age on October 5, 1932. This was done. It disclosed that she attained her majority on August 2, 1932, and that she married on May 28, 1932. Both defendants then interposed exceptions of no cause and no right of action as to the original and amended petitions. On September 9, 1933, the exception filed by W. R. Alexander was sustained, but no judgment was signed dismissing the suit as to him. On December 6th the exception filed by R. C. Alexander was sustained and on the following day judgment was signed dismissing the suit as to him, whereupon, in open court, plaintiff moved for and was granted an order of devolutive appeal to this court, which was perfected by giving proper bond. On December 7, 1933, attorneys for plaintiff filed a petition asking for an order of devolutive appeal from the judgment sustaining the exception filed by W. R. Alexander, wherein it is erroneously averred that the exception filed by him was sustained on December 6th and judgment pursuant thereto signed on December 7th. The order for the appeal was signed in chambers.

In this court R. C. Alexander moved to have the appeal dismissed as to him for the reason, as by him averred, that no appeal and order therefor was asked for and/or granted from the judgment in his favor.

When we had this case before us originally, we erroneously reached the conclusion, and held, that the motion to dismiss the appeal as to R. C. Alexander was good for the reason assigned therein. Further study of the record reveals, as stated supra, that after judgment sustaining exception filed by R. C. Alexander was signed, plaintiff, in open court, did secure order of appeal therefrom. 154 So. 374. It was to correct this error that rehearing was granted. We dismissed the appeal as to W. R. Alexander, on our own motion, because no judgment had been signed by the lower court pursuant to the dismissal of the case so far as he was concerned. No complaint as to this action has been made. The motion to dismiss filed by R. C. Alexander, for the reasons given, is denied.

As concerns the rights of a ward against his or her tutor, after reaching majority or being emancipated, such may only be determined and fixed in an accounting between them. No direct action may be brought against the tutor to recover the amount the ward thinks he is due him. If no account has been filed by the tutor, such action on his part may be forced by invoking the process of the proper court. Eby et al. v. McLain et al., 123 La. 138, 48 So. 772, and authorities therein cited.

This is not the rule as relates to fixing the liability of the undertutor to a minor for the wrongful handling and administration of the minor's property and affairs, illegally committed to him by the tutor. The law does not require an accounting by the undertutor for the simple reason it is not contemplated that this officer should ever have exclusive control of the person of the minor or administer his estate in the capacity of tutor. If, perchance, the undertutor is given exclusive custody and tutelage of a

minor, and to him is committed the exclusive administration and conduct of the minor's estate, in whole or part, then the undertutor's status is simply that of a "negotiorum gestor" and his obligations to the ward are measured accordingly. This was held in Eby v. McLain, supra.

In Thacker v. Dunn, 26 La. Ann. 442, it was held, as regards one having exclusive control of the person of a minor, and who administered the estate of such minor and discharged the duties belonging of right only to a tutor, that the liability of such an one to the minor is the same as though he had been in fact the minor's tutor. The holding in the Eby Case as to the measure and character of obligation the person acting in the capacity of tutor, though not in fact such, bears to the minor, is in conflict with the Thacker v. Dunn Case, but in principle there is no material difference.

The petition in the present case clearly discloses that plaintiff's father and natural tutor committed to R. C. Alexander, undertutor, the exclusive control over her person and like control over her estate, and that these conditions prevailed until she married. The petition also apparently discloses that a considerable part of the principal of her estate was absorbed in paying the expenses incident to her board, clothing, and education, charges which the law obliges the father to pay; and that no judicial authority was obtained to incur a liability for her in excess of her annual revenues and no such authority was secured to pay off such liability after being unlawfully incurred. Further, that when R. C. Alexander made the settlement with plaintiff on October 5, 1932, he was acting for her tutor, and that at that time no final account had been filed by her tutor of his gestion as such, and, therefore, such settlement, under the letter of article 361 of the Civil Code, is absolutely null and void. It has often been held that this article means what it says. It has been strictly enforced by the courts. The wisdom of such a law is obvious. In re Hacket's Tutorship, 4 Rob. 290; Succ'n of Croizet, 12 La. Ann. 401; Rist v. Hartner, 44 La. Ann. 430, 10 So. 759; Succ'n of Vennard, 50 La. Ann. 808, 24 So. 283; Barnes v. Barnes, 155 La. 981, 99 So. 719; Wise v. Van Snider, 16 La. App. 418, 134 So. 715.

We are of the opinion that, all things considered, plaintiff is entitled to litigate with R. C. Alexander the question of his liability to her arising from his control of her person

and the administering of her estate, whether such liability, if any, flows from his acts as "negotiorum gestor" or otherwise; and that for this purpose plaintiff's petition fairly well discloses a cause and a right of action. A trial of the merits of the case will afford both sides opportunity to present their claims, rights, and defenses to the court.

For the reasons herein assigned, the judgment appealed from is set aside and this case, so far as it involves R. C. Alexander, is remanded to the lower court for further proceedings. Costs of appeal are hereby assessed against R. C. Alexander; other costs to await fixing by final judgment.