O’NIELL, J.
The plaintiffs, husband and wife, sued to have their farm declared their homestead, and, as such, exempt from seizure and sale. They obtained an injunction preventing a sale of the property seized in executory proceedings brought by the defendant J. K. Herold on four promissory notes, of $300 each, purporting to be secured by mortgage and vendor’s lien on the property. The cause of action is founded upon the allegation, stated broadly, that the pretended act of sale by the plaintiff J. Rogers Jefferson to one Rebecca Paysingle, for which she gave the promissory notes held by J. K. Herold, was only a sham or subterfuge, resorted to for the purpose of getting rid of the homestead exemption without the consent of the wife of Jefferson, and was made without payment of any price or other consideration, and without intention to convey title.
Defendant Herold pleaded that the plaintiffs had no right or cause of action, and in his answer to the suit, denied that the sale by Jefferson to Rebecca Paysingle was a simulation, and averred affirmatively that it was a genuine bona fide sale. He pleaded' that, by Jefferson’s subsequently purchasing the property from Rebecca Paysingle and assuming payment of the mortgage notes which she had given, the plaintiffs were es-topped and forbidden to deny that Rebecca Paysingle had acquired title by her purchase from Jefferson.
Judgment was rendered in favor of defendants, dissolving the writ of injunction and rejecting plaintiffs’ demands, and they prosecute this appeal.
Before the sale to Rebecca Paysingle, the property in question, being a farm of about 43 acres, belonged to the marital community between the plaintiffs and was their homestead. Jefferson owed to a firm of which J. K. Herold was successor an account for merchandise near $1,200, and owed a Mr. Heilperin a debt near $300. Both obligations were community debts. It appears that Jefferson was willing to pay or secure the debts, but was unable to do so, because his wife would not consent to a waiver of the homestead exemption, and he had no other property.
The Herold firm eventually brought suit against Jefferson, and, three or four days after being cited to answer the suit, he came to the city where his two creditors resided, with a view of settling or adjusting their claims, or to employ an attorney. It appears that, in response to a request from Mr. Heilperin, Jefferson called at Heilperin’s office or store to learn what he wanted, before seeing an attorney. Mr. Heilperin wanted to know what Jefferson intended to do about the suit the Herold firm had brought against him; and, after some discussion of the matter, Mr. Heilperin advised Jefferson to make a sale of the property on such terms as to obtain notes secured by a vendor’s lien, to be used as security or in settlement of the debts he owed. Jefferson consented, and went with Mr. Heilperin to the office of an attorney at law, where the act of sale was made to Rebecca *1067 Paysingle, ostensibly for $1,850, of which $350 was said to be paid in cash, and for the balance Rebecca Paysingle signed and indorsed five promissory notes, for $300 each, secured by mortgage and vendor’s lien on the property. In the meantime, Mr. Heilperin had telephoned to the attorney of the Herold firm and suggested that Jefferson would give notes secured by vendor’s lien on the property, in settlement of both debts, and that he (Heilperin) would agree to the transaction, provided the mortgage securing his note should be superior in rank to that securing the notes to be given to the Herold firm. The attorney for the Herold firm was not satisfied with the proposition, but, after consultation with the senior member of the firm (now deceased), the latter consented to the arrangement. The attorney for the Herold firm then called at the lawyer’s office, where the sale had just been signed, and received four of the mortgage notes, in presence of Jefferson and Rebecca Paysingle. Heilperin retained the other note. Jefferson testified that Mr. Heilperin received the five notes from the notary, and handed four of them to the Herold firm’s attorney; but the latter testified that Jefferson handed him the four notes. The question whether Jefferson ever had possession of the notes, however, is not important in our opinion. The defendant in this suit, J. K. Herold, who, as junior member, succeeded the firm, had no knowledge of the transaction by which the firm acquired the notes. Nor does it appear that the senior member or the attorney of the firm knew that the sale made by Jefferson to Rebecca Pay-single was not genuine.
As a matter of fact, to the knowledge of Mr. Heilperin, the only purpose of the pretended sale by Jefferson to Rebecca Pay-single was to give occasion for making mortgage notes secured by vendor’s lien, exigible against. the homestead. Rebecca Paysingle, an illiterate and impecunious colored woman residing on the Jefferson farm," had no thought of buying the property, nor means with which to pay for it. She was merely interposed as a pretended purchaser, at the suggestion of Jefferson, after Mr. Heilperin had advised that such a sale be made. She did not pay the $350 mentioned as part of the purchase price, nor any part of it; nor did she intend to pay or incur any obligation when she touched the pen in lieu of signing the deed and promissory notes. The wife of Jefferson, having theretofore objected to a waiver of the homestead exemption, was not present at the pretended sale to Rebecca Paysingle, nor was she consulted about it. The plaintiffs are colored people, with little or no knowledge of business or legal transactions. The record discloses, however, that the husband could sign his name. The plaintiffs, as well as Rebecca Paysingle, continued residing on the farm after the pretended sale.
Six months after her pretended purchase from Jefferson, Rebecca Paysingle signed -and placed on record in the conveyance office an affidavit, declaring that the transaction was a fraudulent simulation, made for the purpose of defrauding Jefferson’s wife of her interest in the community property. A year and nine months later she executed and put on record an authentic act, in which she declared that she donated and retro-ceded the property to Jefferson for the purpose of restoring the title which she had pretended to acquire from him; and, nearly two months later, she and Jefferson executed an authentic act by which she declared- that she sold the property to him for the assumpsit by him of the payment of the five promissory notes of $300 each, which she had given in the original sale, and for the further sum of $175, for which Jefferson gave his promissory note, payable in one year. Jefferson’s wife was not a party to any of those transactions and did not at any time consent to a waiver of the homestead *1069 exemption. Hence, as far as she is concerned, it seems that the homestead exemption was never waived or abandoned unless the sale by Jefferson to Rebecca Paysingle should be maintained as a transfer of title.
[1,2] The defendant Herold relies upon the law that a married man, as head and master of the community, may sell the homestead belonging to the community, without the consent of his wife. Defendant contends that, while the community exists, the wife has no right of action to attack as simulated a sale of community property made by her husband. He invokes the general rule that parol evidence is not admissible to contradict the recitals of an authentic act of sale of real estate, and he contends that the rule is particularly applicable when, as in this ease, the evidence is offered against an innocent transferee of negotiable notes purporting to represent part of the purchase price. He invokes, also, the doctrine that possession follows the title when both the vendor and vendee reside upon the property sold.
That a married man, as head and master of the community, may sell the homestead without the consent of his wife, means that he may make a genuine sale of it, bona fide, without her consent. The right to sell the homestead, which is exempt from seizure and sale for an ordinary debt, is expressly reserved in article 246 of the Constitution, which article requires the consent of the wife for a married man to waive the exemption. The exemption of the homestead from seizure and sale for an ordinary debt is a provision of public policy in the Constitution. As we have observed quite often, if article 246, requiring the consent of the wife to enable a married man to waive the homestead exemption, could be obviated simply by disguising a mortgage or security transaction in the form of an act of sale, that provision in the Constitution, enacted for the protection of the dependents of every head of a family, might as well have been omitted. See Becker v. Hampton, 137 La. 323, 68 South. 626, and the decisions there collected.
Every defense urged in this case has been considered and rejected in the decisions of this court.
In Stewart v. Sutton, 48 La. Ann. 1073, 20 South. 283, and in Becker v. Hampton, 137 La. 323, 68 South. 626, it was held that an allegation that what purported to be an act of sale was in reality a security transaction made in the form of a sale, to get rid of the homestead exemption, was an allegation that the transaction was made in fraudem legis; and it was held that such an allegation of fraud permitted the introduction of parol evidence to expose the true consideration and motive of the transaction. See, also, Marbury v. Colbert, 105 La. 467, 29 South. 871.
In Carroll et ux. v. Magee et al., 120 La. 626, 45 South. 528, the facts were quite similar to this case. The plaintiffs were husband and wife, preventing by injunction the sale of their homestead, seized to satisfy a debt purporting to be secured by mortgage and vendor’s lien. The husband had, without the consent of his wife, sold the homestead to the Bickham Mercantile Company, apparently for cash, and had then bought it from the company on. a credit represented by a note secured by mortgage and vendor’s lien. The note was transferred to a bank, before maturity, for'a valuable consideration, and in due course of business; and the bank in turn sold the note to Smith & Bulloch, in good faith, and they instituted the foreclosure proceedings. Carroll and wife, as plaintiffs in the injunction suit, were permitted to prove by parol evidence, over the defendants’ objection, that the sale by Carroll to the Bickham Mercantile Company was made, not for cash, but to secure an existing debt for merchandise bought, and that *1071 the transaction was therefore not in truth a sale and resale, but only a mortgage disguised as two sales. Overruling the objection to parol evidence, it was said that, even if the argument were sound as applied to the husband, Samuel Carroll, it was manifestly unsound as applied to his wife, who was not a party to the alleged sale and resale, and without whose consent the husband was unauthorized to waive the homestead, directly or indirectly. Answering the argument that Smith & Bulloch were innocent holders of the mortgage note, the court said that the mortgage was not a negotiable instrument, though the note was, and that, for the purpose of the homestead exemption, there could be no estoppel that could prevent the courts from ascertaining whether a debt which the mortgage purported to secure was one for which the homestead might be seized and sold; and it was said that individuals were not permitted, by their conventions, to derogate from the force of constitutional ordinances enacted as rules of public order. The court expressly recognized the right of action, not only of the wife, but of the husband, too, as head and master of the community, suing for and on behalf of the dependent wife, for recognition of the homestead exemption and for annulment of the transaction made in fraudem legis.
In the case of Underwood et ux. v. Flosheimer Bros. Dry Goods Co., 129 La. 450, 56 South. 364, the husband, Underwood, had sold the homestead to the Elliott Company for a price declared to be paid in cash. Three months later, one member of the Elliott Company sold his interest in the property to the other members; and, more than a year later, they resold the property to Underwood for a price represented by a negotiable promissory note secured by mortgage and vendor’s lien on the property. The Elosheimer Bros. Dry Goods Company, having acquired the mortgage .note, brought executory proceedings against Underwood and had the homestead seized. Underwood and his wife, by their injunction suit, prevented the sale, and had the acts of sale and resale of the homestead declared a disguised mortgage and the homestead exemption recognized. Answering such arguments as are urged in the present suit, it was said that, however binding the recitals of the deeds might be upon Underwood individually; he could not directly or indirectly waive the homestead exemption without the written consent of his wife, and that, as she was not a party to the deeds, she was not estopped by their recitals. Observing that the Elosheimer Bros. Dry Goods Company had acquired the mortgage note after maturity, the court said, quoting Carroll v. Magee, that it would have made no difference if the Flosheimer Bros. Dry Goods Company had acquired the note before maturity and in good faith. With regard to the right of action to have such a transaction decreed to be in fraudem legis, the court said that the head of the family could maintain the suit for the joint benefit of himself and family, to protect their expectant or resultant right fo the homestead exemption during his lifetime.
[3] The rulings in the two cases referred to dispose of this case in favor of the plaintiffs, appellants. The doctrine that possession follows the title, when both the vendor and vendee of the property remain in possession, establishes only a presumption that the sale was genuine. That presumption was destroyed by proof to the contrary in this case.
[4, 5] It appears that the plaintiffs obtained only a devolutive appeal, which did not maintain the injunction in force or suspend execution of the order of seizure and sale; and there are, in the record, documents which we think do not belong there, indicating that the homestead was sold by the sheriff after judgment was rendered in this suit. Be that *1073 as it may, we can only consider and dispose of the case in the condition in which it was when the judgment appealed from was rendered, and let the subsequent events have such effect as the law may give them. The plaintiffs’ homestead was not subject to seizure and sale by the sheriff, unless it was worth more than $2,000; and if it should be sold by the sheriff for more than $2,000, the plaintiffs are entitled to receive that sum in lieu of the homestead exemption and in preference to the defendant’s claim. Constitution, arts. 244, 245; Bank of Napoleon v. Delaune, 141 La. 911, 75 South. 840. A witness for defendant testified that the homestead was worth $3,500 at the time of the pretended sale by Jefferson to Rebecca Pay-single; Jefferson testified that it was worth only $1,600. AVhether the plaintiffs are entitled to the exemption itself, or to $2,000 in lieu of the exemption, depends upon whether the homestead is worth more than $2,000, which is very doubtful.
The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the act purporting to be a sale by J. Rogers Jefferson to Rebecca Paysingle, dated the 29th of June, 1908, and the retrocession by her to him, dated the 28th of November, 1910, did not convey title to the property, but are valid in so far as they gave a conventional mortgage to secure the debt due by J. Rogers Jefferson to the defendant J. K. Herold. It is further ordered, adjudged, and decreed that the property described in said deeds be, and it is hereby, recognized as the homestead of the plaintiffs, J. Rogers Jefferson and wife, and as such exempt from seizure and sale for the debt due defendant J. K. Herold, unless it be sold for more than $2,000, in which event plaintiffs are entitled to receive $2,000 of the proceeds in lieu of their homestead exemption. The defendant Herold is to pay the costs of this suit.