LAND, J.
This is an injunction proceeding brought by Roy C. Clarke and his wife, Mrs. Jo. Rhea Clarke, to prevent the seizure and sale under executory process of a certain house and lot, situated in the town of Oakdale, La., and claimed by plaintiff and his wife as a homestead, and, -as such, exempt from seizure for ordinary debt.
The defendant in injunction, Wilbur F. Mc-Cammon, asserts his right to have said property seized and sold, as he avers that he is the bona fide holder, for value, before maturity, of the mortgage notes executed by Clarke for the price of the repurchase of said property from Fink & Co., the former vendee of Clarke.
The petitioner, Roy C. Clarke, during his marriage to his present wife, purchased the property in question from Hawkins Woodruff on May 1, 1916, for a cash consideration of $1,850, and plaintiffs immediately took possession of the property, and have lived upon the same until the present time. On May 10, 1917, Clarke sold the property to A. B. Fink & Co., for a consideration stated in the deed to be the sum of $1,850 cash. Clarke’s wife, the coplaintiff, was not a party to this transaction.
On January 20, 1922, Fink & Co. reconveyed the property to Clarke for the sum of $2,360. The act recites that $100 was paid in cash. The credit portion of the purchase price is represented Dy 56 notes; the first note to fall due March 1, 1922; the second note April 1, 1922, and each consecutive note on the first of each succeeding month, until the entire sum, principal and interest, has been paid. These notes bear 8 per cent, interest per annum from date, and are secured by special mortgage and vendor’s lien on the property herein claimed by plaintiffs as a homestead.
On July 20, 1922, Fink & Co. made demand upon Clarke for the payment of the entire series of these notes through their attorney. By the terms of the mortgage securing these notes it is stipulated that “in event 'of any or all of said notes not being paid at maturity, then all of said notes shall at once become due and exigible.”
On August 21, 1922, Fink & Co. sold to W. F. McCamm on notes numbered 7 to 55, inclusive, each for the sum of $40, and note numbered 56 for the sum of $60. The sale was made by public act, and' these notes amounting to the sum of, approximately, $2,000 were purchased by McCammon for a consideration of $1,600, or at a discount of 25 per cent.
Although note numbered 1 of the series was the only note that had been paid, and was not canceled on the mortgage records until August 21, 1922; ye£ notes numbered 2, 3, 4, 5, and 6 were canceled on said records on August 19, 1922, although not paid. This cancellation took place two days before the sale of the balance of the notes by Fink, & Co. to McCammon.
Plaintiffs attack the sale from Clarke to Fink & Co. as in fraudem legis, and as a mere subterfuge, or disguised mortgage, to defeat the homestead exemption and to subject the property to the payment of ordinary debts due by Clarke to Fink & Co.
While the husband may sell, but not mortgage, the homestead without the consent of the wife, under article 246 of the Constitution of 1913, such sale must be a genuine, bona fide sale, and not made to evade the homestead exemption. The exemption of the homestead from seizure and sale for an ordinary debt is a provision in the Constitution of this state founded upon public policy, and was ordained for the protection of the dependents of every head of a family. The consent of the wife is required to enable a married man to waive the homestead exemption, and this provision of the Constitution cannot be circumvented by *806 “camouflaging” a mortgage, or security transaction, as a sale. Jefferson v. Herold, 144 La. 1064, 81 South. 714; Becker v. Hampton, 137 La. 323, 68 South. 626.
The question of the intention of the parties in cases of this character is therefore one of vital consequence, and that question is to be determined in each case from the evidence adduced and surrounding circumstances, and parol testimony is admissible to discover the true consideration and motive of the transaction. Ransonet v. Menard, 145 La. 584, 82 South. 707; Stewart Bros. & Co. v. Sutton, 48 La. Ann. 1073, 20 South. 283; Marbury v. Colbert, 105 La. 467, 29 South. 871; Jefferson v. Herold, 144 La. 1070, 81 South. 714.
Clarke sold the homestead to Pink & Co. without the consent of his wife. She is therefore not estopped to assert her right in the present proceeding against the holder of the notes given by her husband as for the purchase price of the property resold to him by Pink & Co.; nor does it make any difference whether said notes were acquired in good faith before maturity or not. Carroll v. Magee, 120 La. 626, 45 South. 528; Underwood v. Flosheim Bros. Dry Goods Co., 129 La. 450, 56 South. 364; Jefferson v. Herold, 144 La. 1070, 1071, 81 South. 714.
Sales and resales, having for their purpose merely the conversion of an unsecured debt into a debt secured by mortgage and vendor’s lien on the property otherwise entitled to the homestead exemption, are pignorative contracts, and void as to the homestead. Stewart v. Sutton, 48 La. Ann. 1073, 20 South. 283; Carroll v. Magee, 120 La. 627, 45 South. 528; Crain v. Bank, 130 La. 945, 58 South. 824; Henkel v. Mix, 38 La. Ann. 271.
Clarke testifies that the sale he made to Pink & Co. was not a bona fide sale, but was intended as security for a debt he owed the company. Mrs. Clarke had refused to sign a mortgage on the property, when requested to do so by Schempp, the manager of the company. Schempp and- Wheeler, the latter the chief .office man and a member of the board of directors, stated to the deputy assessor of Allen Parish, when returning the property for assessment, that Pink & Co. had a need, and that they were to hold the place until Clarke paid them what he owed them. Spinnenwebbea testifies that Wheeler informed him that Pink & Co. had a mortgage on the house, and that it was more tban the house was worth.
That the sale of this property by Clarke to Pink & Co. was intended as a disguised security to evade the homestead exemption is shown also by the fact that, although the consideration is stated to be $1,800 cash, no cash was paid at all; the real consideration being the sum of $488 due by Clarke on account to Pink & Co., and the further sum of $579.07 due by Clarke to the Calcasieu Bank of Oakdale, and paid by Pink & Co., or the total sum of $1,067.07. These were ordinary debts.
Clarke and his wife remained in possession of this property after the sale to Pink & Co., and paid no rent. The property at the time it was resold by Pink & Co. to Clarke was not worth $2,000. Clarke estimates its value at $1,500; yet the consideration is stated to be $2,360, or approximately the amount due said company by Clarke at the date of the reconveyance; Clarke’s indebtedness to said company at the time being $1,591, in addition to. the original indebtedness of $1,067.07.
Although it is stated in the deed from Pink & Co. to Clarke that $100 was paid in cash on the purchase price, no cash payment was made at all. The $1,591 was also an ordinary debt; the whole indebtedness being secured by vendor’s privilege and special mortgage in the act of sale. Clarke had been employed by Pink & Co. in a department store at Oakdale, La., prior to May, 1917, and up to February, 1921, when he was dis *808 charged. During that period he had a running account and several other accounts at the store, and his indebtedness had steadily increased.
It is also significant that Fink & Co., after demanding the payment of the mortgage indebtedness from Clarke, sold the notes to McCammon, a close friend, and, although only the first of these notes had been paid, caused to be canceled on the mortgage records notes numbered 2, 3, 4, 5, and 6 that had not been paid, in order to make it appear that McCammon was an innocent purchaser of this paper. We are satisfied, from all the facts and circumstances of the case, that ,the sale from Clarke to Fink & Co. and the reconveyance by said company to him were not genuine, bona fide sales, but disguised mortgages, and were made in fraudem legis in order to subject the homestead to the payment of ordinary debts. This is the view taken by the trial judge, who has fully protected the homestead rights of the plaintiffs in the judgment rendered in their favor.
Judgment affirmed.