**148 So. 663**

**REYMOND v. LOUISIANA TRUST & SAV-INGS BANK.**

No. 31423.

May 1, 1933.

Rehearing Denied May 29, 1933.

Rosen, Kammer, Wolf & Farrar, of New Orleans, and Fred G. Benton and Roland C. Kizer, both of Baton Rouge, for appellant.

Taylor, Porter & Brooks, of Baton Rouge, for appellee.

ODOM, J.

Plaintiff has appealed from a judgment dismissing her suit on exception of no cause of action.

The facts disclosed by the petition, and we accept the allegations as true, are that plaintiff is the wife of Dalton S. Reymond and that the two were married under the community régime. On October 19, 1926, Dalton S. Reymond purchased from the Jefferson Homestead Association of Baton Rouge a certain lot of ground with a residence thereon, the homestead association reserving a vendor's lien thereon in the sum of $5,000. This property fell into the community and the couple occupied it as a residence until some time prior to November 24, 1928, when plaintiff's husband abandoned her without cause, and since then they have lived apart.

After the separation, plaintiff continued to occupy the premises as a home until February 1, 1930, when the property was sold under foreclosure proceedings instituted by the Jefferson Homestead Association to enforce its vendor's mortgage.

On November 24, 1928, plaintiff filed and recorded in the conveyance records of East Baton Rouge parish, where the property is situated, a description of the property, together with an authentic declaration that she and the said Dalton S. Reymond were married and designating said property as a family home, said Reymond, the husband, not having previously filed such declaration, all as provided by Act 35, Ex. Sess. 1921, p. 38.

On March 9, 1929, nearly five months after Mrs. Reymond had filed and recorded this declaration, the husband, without the wife's knowledge or consent, executed a mortgage on the property for $17,160, making the mortgage and notes payable to the order of any future holder. The notes were pledged as collateral to the defendant bank to secure a pre-existing debt due by the husband to the bank.

Plaintiff alleged that in making this mortgage, which was second to that held by the homestead association, the husband acted in collusion with the bank, the purpose being to defraud her and to defeat her homestead rights and such rights in the property as were secured by virtue of her declaration filed and recorded according to the provisions of Act 35, Ex. Sess. of 1921.

When the property was sold under foreclosure by the Jefferson Homestead Association on February 1, 1930, the defendant bank, which was the holder of the second mortgage notes, purchased it at $8,075, which was approximately $3,000 in excess of the amount due the homestead association. The defendant paid to the sheriff the amount due the homestead association and retained the excess and applied it as a credit on its second mortgage notes.

When the property was sold, plaintiff was forced to vacate. She alleges that at the time she filed the declaration, she had no other home and no other property; that she was then and at the time the property was sold and is now destitute, and is wholly dependent upon her husband for support.

She further alleges that her husband has failed and refused to claim the homestead exemptión, as provided in article 11 of the Constitution of 1921, or to take steps to protect her rights under the exemption and her rights under Act 35 Ex. Sess. of 1921, and that she has therefore been driven to the necessity of bringing this proceeding without his authorization or assistance.

She prays for judgment against the bank for $2,000.

(1) The exception of no cause of action, which was sustained by the trial judge, is grounded upon the proposition that Mrs. Reymond, the wife, is not the head of a family and has no one dependent upon her for support and cannot, for those reasons, claim the benefit of the homestead exemption granted by article 11 of the Constitution, which provides that, "There shall be exempt from seizure and sale by any process whatever except as herein provided, and without registration, the homestead, bona fide, owned by the debtor and occupied by him, consisting of lands, not exceeding one hundred and sixty acres, buildings and appurtenances, whether rural or urban, of every head of a family, or person having a mother or father or a person or persons dependent on him or her for support." (Section 1.)

If this were all the Constitution of 1921 said about homestead exemptions and if Act 35 of the Extra Session of 1921 had not been adopted, the argument made by counsel for the defendant would be unanswerable.

But the Constitution goes further and provides in section 3 of article 11 that:

"Any person entitled to a homestead may waive same, in whole or in part by signing a written waiver thereof; *provided, that if such person be married, and not separated from bed and board from the other spouse, then the waiver shall not be effective unless signed by the latter;* and all such waivers shall be recorded in the mortgage records of the parish where the homestead is situated." (Italics ours.)

■■ The Constitution was finally adopted on June 18, 1921. The Legislature assembled soon thereafter in special session and on November 19, 1921, adopted Act 35, which provides:

"Section 1. Be it enacted by the Legislature of Louisiana, That whenever there shall have been placed of record in the conveyance records of the Parish in which it is located, an adequate and accurate description by metes and bounds, (or other indicia of location, limits and area sufficiently definite to identify, locate and delimit the same), of any lot or parcel of land, together with the authentic declaration of the owner thereof, that he is a married man, and that he desires to and does designate said property as a family home, such particularly described property shall not thereafter be validly sold or mortgaged during the marriage by the husband except with the consent of his wife, expressly set forth in the act or deed, as the

case may be, and signed by her or her duly authorized attorney in fact.

"Section 2. If the husband shall refuse, or neglect for a period of six months after this Act shall go into effect or the acquisition of a home, to file and record such declaration as provided for in this Act, his wife, who shall be living with her husband, may make, file and record an authentic declaration as provided in Section 1 of this Act; provided that such declaration made by the wife shall be limited to community property occupied as a home, and in case of city, town, or village property shall include not exceeding one lot or lots of ground on which the family residence is actually situated, and in case of rural property shall include not exceeding twenty (20) acres of land on which the family residence is situated."

Section 3 of article 11 of the Constitution relating to the waiver of the homestead exemption and Act 35 of the Ex. Sess. of 1921 must be read and construed together. The legislative act supplements the constitutional provisions with reference to the waiver. When so read and construed, and when the plain and unambiguous terms of the act are considered, the conclusion is inescapable that when a married woman, who is otherwise destitute and whose husband is entitled under the Constitution to claim the benefit of the exemption but who fails or refuses to avail himself of that benefit, avails herself of the privilege granted by the act, she then has a vested right or interest in the home or homestead which cannot be divested under any process without her consent.

█ Under the Constitution, a husband may make a bona fide sale of the homestead without his wife's consent. But if she avails herself of the privilege granted by said act by filing and recording the declaration therein mentioned, then the husband has no power or authority either to mortgage or sell it without her consent.

Section 1 of the act specifically provides that whenever there shall have been placed of record a declaration by the owner (meaning the husband, who is head and master of the community) of certain property that he is a married man "and that he desires to and does designate said property as a family home, *such particularly described property shall not thereafter be validly sold or mortgaged during the marriage by the husband except with the consent of his wife, expressly set forth in the act or deed*, as the case may be, and signed by her or her duly authorized attorney in fact." (Italics ours.)

Section 2 of the act provides that in case the husband fails or refuses for a period of six months after the home is acquired to make and record such declaration, "his wife, who shall be living with her husband, may make, file and record an authentic declaration as provided in Section 1 of this Act."

The declaration filed and recorded by the wife, in default of one filed by the husband, has the same effect as one filed by the husband, which is that the home or homestead cannot thereafter be sold or mortgaged without her consent in writing.

█ In the present case, the wife filed and recorded her declaration on November 24, 1928. Her husband executed the mortgage and notes held by the defendant bank five months later. This mortgage being made in contravention of a prohibitory law is there-

fore void (C. C., art. 12), and it follows that the defendant bank is holding the excess of the purchase price of this property over and above the amount paid to the sheriff in satisfaction of the first mortgage without the vestige of legal right.

(2) The question then arises whether Mrs. Reymond may, under the circumstances, recover this amount, or such part thereof as she has claimed.

Barring the question of estoppel in so far as the husband himself is concerned, on which we express no opinion, the husband as head of the family could claim this excess to the extent of $2,000 for the benefit of his dependent wife, even though the property has been sold, the excess being yet in the hands of the purchaser and not distributed. Coleman v. Continental Bank & Trust Co., 139 La. 1078, 72 So. 742; Johnson v. Agurs, 116 La. 634, 40 So. 923, 114 Am. St. Rep. 562; Abbott v. Heald, 128 La. 722, 55 So. 28.

Mrs. Reymond alleges that her husband has not only failed but refuses to avail himself of the right to claim this excess and for that reason her rights in the premises will be lost if she be not allowed to recover under the action she has brought. The question then is whether she should be allowed to recover.

As we have already said, she had, under the conditions recited, a vested right or interest in the homestead and it follows that she has a vested right in the proceeds over and above the amount necessary to pay the claim of the Jefferson Homestead Association. Having such vested right, she has also a remedy, which is the one to which she has resorted. To hold otherwise would be to set at naught the manifest intent and purpose of section 2 of Act 35, Ex. Sess. of 1921, if not in fact to circumvent the provision of the Constitution with reference to the waiver of the homestead. It would indeed be a vain and idle procedure for a wife to protect her rights in the homestead by recording her declaration as provided by the act if she has no remedy to protect that right. If she has no such remedy, then it is within the power of the husband to thwart one of the very purposes of the act, which was to permit the wife to make it legally impossible for him either to validly mortgage or sell the homestead without her consent.

(3) In the Constitutions of 1898 and 1913 (art. 246), it was provided that any person entitled to a homestead might waive the same, "by signing with his wife, if she be not separated a mensa et thoro, and having recorded in the office of the Recorder of Mortgages of his parish, a written waiver of the same."

Under the Constitution of 1921 (art. 11, § 3), it is provided: "Any person entitled to a homestead may waive same, in whole or in part, by signing a written waiver thereof; provided, that if such person be married, and not separated from bed and board from the other spouse, then the waiver shall not be effective unless signed by the latter."

These provisions for the waiver of the exemption refer only to mortgages, the husband who is the head and master of the community being left free to make a bona fide sale thereof as he might see fit. But it has been consistently held that no device or sub-

terfuge entered into between a husband and his creditor, such as the sale and resale of the homestead with retention of the vendor's privilege, or a sale with right of redemption, would defeat the debtor's right to claim the exemption for the benefit of his dependents. Carroll et ux. v. Magee, Sheriff, 120 La. 626, 45 So. 528, 529; Crain v. Bank of Osyka, 130 La. 945, 58 So. 824; Becker v. Hampton, 137 La. 323, 68 So. 626; Jefferson v. Herold, 144 La. 1064, 81 So. 714, 716; Ransonet v. Menard, 145 La. 573, 82 So. 707; Clarke et ux. v. Oden, Sheriff, 155 La. 801, 99 So. 605, 606.

The right to claim the homestead exemption is founded upon public policy, the underlying theory being that the debtor's duty to protect those dependent upon him is paramount to his duty to pay debts.

The husband who grants a mortgage on the homestead without the consent of his wife, whether under the guise of a sale and resale, sale with right of redemption or otherwise, may be bound personally by the recital of such acts and may be estopped to claim the exemption personally. But he is not estopped thereby to claim the exemption for his dependents. The reason is that the exemption was ordained for the protection of the dependents of every head of a family. In Jefferson v. Herold, supra, the court referred to the exemption as "that provision in the Constitution, enacted for the protection of the dependents of every head of a family." In Clarke v. Oden, Sheriff, supra, it was said that the exemption was "founded upon public policy, and was ordained for the protection of the dependents of every head of a family." In Crain v. Bank, supra, the court had under consideration a case where there

was a sale and resale of the homestead. The court said that doubtless the husband was estopped by the recitals of the act, and further; "But the true question is whether the simulated transaction operated as a waiver of the homestead as against the wife and minor children of Crain, *for whose benefit the homestead right of exemption was granted.*" (Italics are the writer's.)

This right of exemption granted in favor of a married man for the benefit of his dependent wife and other members of the family, should, of course, be claimed or exercised by him as head of the family. But if the husband fails or refuses to exercise that right for the benefit of his dependent wife, it does not follow that she may not do so for the protection of herself. She is not bound by his failure or refusal to act. This is especially so in a case where she avails herself of the provisions of Act 35 Ex. Sess. of 1921, which supplements the right granted her under the Constitution.

It has been frequently held that a wife may assert her rights to the exemption granted by the Constitution where the husband has attempted to circumvent the provision inhibiting him from waiving the exemption without her consent.

In Banahan v. Svarva, 146 La. 906, 84 So. 200, 202, it was said:

"It has also been held, in other cases, wholly unlike the case here presented, that the husband may be estopped by his laches in failing to assert his homestead rights but it has never yet been held that the wife can be estopped by the action or inaction of the husband."

In Carroll v. Magee, supra, the argument was made that Carroll, the husband, who had made a sale and resale of the homestead, should not be permitted to go behind the face of the record, and the court said:

"But, even if the argument were sound as applied to Samuel Carroll, it is manifestly unsound as applied to his wife, who was not a party to the alleged sale and resale of the property, and without whose consent the husband was unauthorized, whether directly or indirectly, to waive the homestead."

Further on in the opinion the court said:

"In the case at bar the wife of the plaintiff in injunction * * * is before the court asserting rights which, upon no theory that has been propounded, is she estopped to assert."

In Jefferson v. Herold, supra, the court reviewed much of the jurisprudence relating to the wife's rights in the homestead. Commenting especially on the case of Carroll v. Magee, the court in the Jefferson Case said:

"The court expressly recognized the right of action, not only of the wife, but of the husband, too, as head and master of the community, suing for and on behalf of the dependent wife, for recognition of the homestead exemption and for annulment of the transaction made in fraudem legis."

In Clarke v. Oden, supra, the court said:

"Clark sold the homestead to Fink & Co. without the consent of his wife. She is therefore not estopped to assert her right in the present proceeding against the holder of the notes given by her husband as for the purchase price of the property resold to him by Fink & Co."

In none of these cases did the wife assert rights granted by the Act of 1921, all except one having been decided prior to its adoption. In the case of Mallouf v. Fontenot, Sheriff et al., 170 La. 612, 128 So. 652, 655, the property claimed as a homestead belonged to the community and stood in the name of the husband, who abandoned his wife in 1923. In April, 1924, the wife appeared before a notary and made designation and declaration of the property as a family home as provided by the Act of 1921. Subsequently one K. Moosa, an alleged creditor, sought to have the property sold for a debt made by the husband, but which the court found had been paid.

Mrs. Lillian Mallouf, the wife, without being joined or assisted by her husband, successfully enjoined the sale. She made practically the same allegations as those made by Mrs. Reymond in this case, the only material difference being that there were several minor children of the marriage. She did not claim the exemption as head of a family, but alleged that she had filed and recorded the declaration and dedication under said act.

Concluding its opinion, the court said:

"The conclusion is inescapable that plaintiff's husband, Alexander Nacol, with the assistance of his near relatives, is attempting to use the courts for the purpose of circumventing his wife in her effort to protect her homestead rights under the provisions of Act No. 35 of 1921 (Ex. Sess.). This cannot be permitted."

In that case the court upheld the wife's right to claim and exercise her homestead

rights on the property seized. The fact that there were minor children of the marriage does not differentiate that case from this. The wife did not seek to exercise the right on the ground that she had minor children dependent upon her for support.

Counsel for the bank in the present case call attention to the fact that the designation of the home may be made by "his wife, who shall be living with her husband," and they point out that according to Mrs. Reymond's allegations, she was not living with her husband when she made and filed the declaration. She alleged that her husband had abandoned her but that she continued to occupy the premises as a home. The fact that her husband had abandoned her did not preclude the filing of the declaration. She was living with her husband under the intendment of the act, not being separated from him by judgment a mensa et thoro and not having abandoned him or the family home. The situation was precisely the same in the Mallouf Case, where the husband abandoned the wife long prior to the date on which she filed her designation.

Counsel for the bank, appellee, cite the very recent cases of Planters' Bank & Trust Co. v. Savant, 172 La. 464, 134 So. 394, and Brantley v. Pruitt, 175 La. 879, 144 So. 604, in each of which it was held that in order that a debtor might successfully claim the benefit of the homestead exemption, he must prove the following indispensable conditions:

(a) He must be the bona fide owner of the land,

(b) He must occupy the premises as a residence,

(c) He must have a family or person or persons dependent upon him for support, and,

(d) The property must not exceed in value $2,000.

Counsel stress the point that the person claiming the exemption must be the head of a family or have some person or persons dependent upon him for support. In the cases cited, the exemption was claimed on the ground that the claimant was the head of a family and had dependents.

In the case at bar, plaintiff does not seek to recover on either the ground that she is the head of a family or that there are persons dependent upon her for support. She is asserting her rights in the family home or its proceeds as a dependent wife in default of the exercise of that right by her husband in her behalf, under the Constitution and the act of 1921.

It is suggested that if she succeeds, the amount she recovers will have to be turned over to her husband as head and master of the community. If that be true, that fact does not bar her action. But she alleges that in so far as her husband is concerned, he has abandoned the home and therefore forfeited his right to claim the exemption. Whether he has abandoned the home or not is a question of fact which will have to be proved on the trial.

For the reasons assigned, the judgment appealed from is reversed. It is ordered that the exception of no cause of action be overruled and the case reinstated on the docket of the nineteenth judicial district court, there to be tried and proceeded with according to law and the views herein expressed. Cost of this appeal to be paid by the appellee, all other costs to abide final results.