292 So.2d 721 (1974)
Ramon BARLOW, Plaintiff-Appellee,
v.
The ESTATE of Sherman CARR, Defendant,
Mary W. Carr, Intervenor-Appellant.
No. 12275.
Court of Appeal of Louisiana, Second Circuit.
March 19, 1974.
*722 McIntosh & Fox by Leo A. Miller, Jr., Lake Providence, for intervenor-appellant Mary W. Carr.
Captan Jack Wyly, Lake Providence, for plaintiff-appellee.
Before PRICE, HALL and WILLIAMS, JJ.
HALL, Judge.
Intervenor, Mary W. Carr, appeals from a judgment denying her claim to a homestead exemption under the provisions of Article XI of the Louisiana Constitution, in a suit brought by a mortgage creditor to foreclose two mortgages by executory process. We reverse the judgment of the district court.
Plaintiff, Ramon Barlow, filed suit to foreclose by executory process two mortgages executed by Sherman Carr in 1968, affecting certain property located in East Carroll Parish, Louisiana. Pursuant to allegations that Carr died July 12, 1973, an attorney was appointed to represent his unopened succession. Seizure and sale of the property was ordered and a seizure was effected by the sheriff.
Mary W. Carr intervened alleging the seized property was the homestead of Mary and Sherman Carr from the date of *723 their marriage in 1965 to the time of his death and that the mortgages contained no waiver by her of the homestead exemption to which she is entitled under Louisiana Constitution Article XI. She prayed that plaintiff and the sheriff be ordered to show cause why she should not be paid $4,000 in preference to the plaintiff if the property should sell at sheriff's sale for an amount in excess of $4,000 and why any sale made for a price not in excess of $4,000 should not be null and void. Plaintiff filed an answer to the intervention and rule, denying intervenor's right to the constitutional homestead exemption.
After trial of the matter, the district court dismissed the rule and denied intervenor's claim to a homestead exemption. Intervenor was granted an order of appeal from the judgment and by separate motion and order the district court ordered the sheriff to withhold the proceeds of the impending sheriff's sale up to the sum of $4,000, subject to further orders of the court.
The property was sold at public sale by the sheriff to Captan Jack Wyly for a price of $4,000 cash. After deducting costs and expenses, there remained a balance of funds held by the sheriff pursuant to court order of $3,746.50.
The essential facts are:
(1) The property involved was Sherman Carr's separate and paraphernal property, having been acquired by him prior to his marriage to Mary W. Carr;
(2) A residence and a store building are located on the property;
(3) Sherman and Mary Carr were married in 1965, and lived together as husband and wife in the residence located on the subject property from the time of their marriage until his death in 1973;
(4) Sherman and Mary Carr had no children born of their marriage. At one time, Mary Carr's mother lived with them, but she had not lived with them for six months prior to Sherman Carr's death. Since her husband's death Mary Carr has lived alone on the property;
(5) The debts evidenced by the mortgage notes were debts of the community existing between Sherman and Mary W. Carr;
(6) The notes and mortgages were signed by Sherman Carr in 1968 and were not signed by Mary W. Carr;
(7) Each mortgage contains a clause whereby Sherman Carr waived any and all homestead claims or exemptions to which he is entitled by law upon the mortgaged property.
The issue in this case is whether a surviving widow without children or other dependents is entitled to claim the homestead exemption provided by Louisiana Constitution Article XI as against a creditor foreclosing mortgages containing waivers of homestead exemption signed by the deceased husband, but not signed by the wife, granted while the husband and wife were living together on the mortgaged property which was the separate property of the husband.
Article XI of the Louisiana Constitution provides in pertinent part:
"Section 1. There shall be exempt from seizure and sale by any process whatever, except as hereinafter provided, the homestead, bona fide, owned by the debtor and occupied by him, consisting of lands, not exceeding one hundred and sixty (160) acres, buildings and appurtenances, whether rural or urban, of every head of a family, or person having a mother or father or a person or persons dependent on him or her for support; also two work horses, one wagon or cart, one automobile truck, one yoke of oxen, two cows and calves, twenty-five head of hogs, or one thousand pounds of *724 bacon, or its equivalent in pork, whether these exempted objects be attached to a homestead or not, and on a farm, the necessary quantity of corn and fodder, hay and potatoes, for the current year, and the necessary farming implements, to the total value of not more than Four Thousand Dollars ($4,000.00).
"Provided, that in case the homestead exceeds Four Thousand Dollars ($4,000.00) in value, the beneficiary shall be entitled to that amount in case of a sale of the homestead under legal process realizes more than that sum; if the sale does not realize more than that sum, over and above all costs and expenses, said sale shall be null and void.
"The benefit of this exemption may be claimed by the surviving spouse, or minor child or children, of a deceased beneficiary."
"Section 2. Rights to homesteads or exemptions, under laws, or contracts or obligations existing at the time of the adoption of this Constitution, shall not be impaired, repealed or affected by any provision of this Constitution, or any laws passed in pursuance thereof.
"This exemption shall not apply to the following debts, to-wit:
* * * * * *
"7. For the amount which may be due for money advanced on the security of a mortgage on said property; provided, that if at the time of granting such mortgage the mortgagor be married, and not separated from bed and board from the other spouse, the latter shall have consented thereto.
"No court or ministerial officer of this State shall ever have jurisdiction, or authority, to enforce any judgment, execution, or decree, against the property exempted, as a homestead, except for the debts above mentioned in numbers one, two, three, four, five, six and seven of this Section; provided the property herein declared exempt shall not exceed in value Four Thousand Dollars ($4,000.00)."
"Section 3. The right to sell voluntarily any property that is exempt as a homestead shall be preserved; but no sale shall destroy or impair any rights of creditors thereon. Any person entitled to a homestead may waive same, in whole or in part, by signing a written waiver thereof; provided, that if such person be married, and not separated from bed and board from the other spouse, then the waiver shall not be effective unless signed by the latter; and all such waivers shall be recorded in the mortgage records of the parish where the homestead is situated. Such waiver may be either general or special, and shall have effect from the time of recording."
Plaintiff contends intervenor is not entitled to claim the homestead exemption because:
(1) The property was Sherman Carr's separate property and Mary Carr is not now and never has been the owner thereof;
(2) A wife or surviving spouse is not entitled to a homestead exemption on the separate property of her husband;
(3) Mary Carr is not the head of a family, nor does she have a mother or father or other persons living with her and dependent on her for support;
(4) Even if she could otherwise claim any homestead exemption to which her husband was entitled, he was not entitled to the exemption because he expressly waived it in the acts of mortgage;
(5) She failed to record a written declaration of homestead pursuant to LSA-R.S. 20:1.
*725 Intervenor contends:
(1) The homestead exemption granted to an owner of property may be claimed by the owner-beneficiary's surviving spouse;
(2) It is the status of the owner-beneficiary as head of the family or as having persons dependent on him which determines entitlement to the exemption, not the status of the surviving spouse;
(3) The homestead exemption may be claimed by the surviving spouse, regardless of whether the property is community property or the separate property of the husband;
(4) A waiver of homestead exemption signed by the husband is ineffective as such a waiver must be joined in and consented to by the spouse when the owner is married.
In order to claim the constitutional homestead exemption, the debtor must be the owner of the land and must be the head of a family or have a mother or father or person or persons dependent on him for support. However, where the exemption is claimed by a person as the surviving spouse of a deceased beneficiary, it is the status and qualifications of the deceased original beneficiary which governs entitlement to the homestead exemption. Stated in another way, if the original beneficiary could have successfully claimed the exemption, then the exemption inures to the benefit of the surviving spouse who need not individually meet the same qualifications at the time the exemption is claimed. Succession of White, 170 La. 403, 127 So. 883 (1930); Harrell v. Crow, 214 La. 543, 38 So.2d 226 (1948).
In Succession of White, the court dealt specifically with the issue of whether a surviving widow who has no one dependent on her for support may claim the constitutional homestead exemption against debts contracted by her husband or the community. The court held:
"The plain declaration of the constitutional provision is that the homestead exemption may be claimed by the surviving spouse or minor child or children of a deceased beneficiary.
"It cannot be disputed that the husband of the claimant herein, if he were living, could successfully claim the homestead exemption. Therefore it would be a strained and unnatural construction of the constitutional declaration to hold that his death deprived his widow, to whom he owed the high moral and legal duty of support, of the benefit of the exemption. The whole theory of the exemption of the homestead is that the obligation of the debtor to those whom he owes the duty to support is a higher obligation than the payment of his debts. The purpose of the framers of the law was to secure a home beyond the reach of financial misfortune, around which gather the affections of the family; the greatest incentive to virtue, honor, and industry. Hebert v. Mayer, 48 La.Ann. 938, 20 So. 170. This purpose would certainly be defeated if we should hold that the exemption in favor of a husband and father was not transmitted on his death to his widow and children. We cannot so hold. On the contrary, our conclusion is that it is only where a widow seeks to claim the homestead exemption against her own debts that she must do so as the head of a family or have a dependent or dependents; that these conditions are not required when she claims the exemption against debts contracted by her husband or by the marital community-debts against which the husband, himself, could have successfully claimed the exemption; that in such a case the exemption inures to her benefit as the surviving spouse upon the death of her husband, the original beneficiary under the constitutional article."
*726 The rationale of Succession of White applies equally to the requirement that the debtor be the owner of the land. It is the status of the original beneficiary as owner which governsnot the ownership of the surviving spouse or minor children who have the benefit of the exemption under the express provisions of the last paragraph of Section 1 of Article XI. See Maxwell v. Roach, 106 La. 123, 30 So. 251 (1901), and Adams v. McCoy, 140 La. 26, 72 So. 797 (1916).
The Constitution makes no mention of or distinction between separate and community property. There is no reason why a surviving spouse should not be able to claim the homestead exemption as to the deceased husband's separate property constituting the homestead and mortgaged to secure community debts. Nothing in the Constitution limits the exemption claimed by a surviving spouse to community property. That the exemption should apply equally to the separate property of the deceased spouse as well as to community property is in keeping with the theory and purpose of the homestead exemption which is to secure to the family a home beyond the reach of financial misfortune. The protection of the surviving spouse and children and the security of their home is no less important because the home happens to be the separate property of the deceased spouse. The Constitution makes no distinction and there is none.
Plaintiff contends the surviving spouse may only claim the homestead exemption when the deceased husband could have successfully done so if living, which Sherman Carr could not have done in this instance because he waived the exemption in the acts of mortgage. The express provisions of the Constitution and the jurisprudence are contrary to this contention.
Section 2 of Article XI provides the exemption shall not apply to debts for money advanced on the security of a mortgage on the homestead, "provided, that if at the time of granting such mortgage the mortgagor be married, and not separated from bed and board from the other spouse, the latter shall have consented thereto". Section 3 of Article XI provides that any person entitled to a homestead may waive same by signing a written waiver thereof, "provided, that if such person be married, and not separated from bed and board from the other spouse, then the waiver shall not be effective unless signed by the latter;. . .".
Mary Carr did not consent to the mortgage of the homestead nor did she sign the waiver of the homestead exemption. Therefore, the exemption applies to the mortgage indebtedness and the waiver signed only by Sherman Carr is entirely ineffective.
The Constitutional homestead exemption is not merely for the benefit of the husband, but is for the benefit of his wife and children as well. If Sherman Carr had lived the homestead exemption could have been claimed for the benefit of his wife even though he signed a waiver.
In Hammond State Bank & Trust Co. v. Broderick, 179 La. 693, 154 So. 739 (1934) the court held:
"The protection of the family is the principal object of homestead exemption laws, and the right to such exemption is a matter of public policy. Hebert v. Mayer, 48 La.Ann. 938, 20 So. 170.
"The homestead exemption is not a law for the husband and his protection but for the benefit of the wife and children as well. The whole theory and policy of the homestead exemption is founded on the principle that there is a natural moral obligation on the head of the family to provide for the support of his wife and children, which is, if not paramount, equal to his obligation to pay his debts. 13 R.C.L. verbo `Homestead,' §§ 5 and 6.
"Since the title to a homestead is usually vested in the husband, he must *727 be treated as acting, at least to some extent, as the trustee of his wife and children for the protection of this right, and is necessarily vested with power to perform all acts necessary to secure the title and effectuate the design of the statute. 13 R.C.L. verbo `Homestead,' § 28.
"The act of the husband cannot destroy the right of the wife and children to the homestead exemption, nor can the assertion of this right be estopped by the act of the husband. Underwood v. Flosheim Bros. Dry Goods Co., 129 La. 450, 56 So. 364; Crain v. Bank of Osyka, 130 La. 945, 58 So. 824; Becker v. Hampton, 137 La. 323, 68 So. 626; Clarke v. Oden, 155 La. 801, 99 So. 605.
"To make estoppel effectual as to a homestead, it must operate both as to the husband and to the wife. 13 R.C.L. verbo `Homestead,' p. 662."
We hold that Mary Carr as surviving spouse of Sherman Carr is entitled to claim the constitutional homestead exemption on the mortgaged property as against the foreclosing mortgage creditor. Her claim was timely and properly asserted. The public sale of the property did not realize more than $4,000, over and above all costs and expenses, and, therefore, the sale is null and void under the express provisions of the second paragraph of Section 1 of Article XI. See Cloud v. Cloud, 127 So.2d 560 (La.App. 3d Cir. 1961).
Plaintiff further argues that intervenor is not entitled to the homestead exemption because she failed to execute and record a written declaration of homestead as required by LSA-R.S. 20:1. This argument is wholly without merit. Section 4 of Article XI specifically provides that the homestead exemption shall exist without registration except where the property is situated in a city having a population of more than 250,000 in which event the exemption shall not be valid unless recorded in the manner provided by Act 114 of 1880 (now LSA-R.S. 20:1). LSA-R.S. 20:1 has no application to the property involved in this case which is not located in a city having a population of more than 250,000.
Plaintiff cites Golden v. Crawley, 28 So.2d 129 (La.App. 2d Cir. 1946) for the proposition that a surviving widow is not entitled to a homestead claim on her deceased husband's property, but is limited to the rights provided by LSA-C.C. Art. 3252. That case involved a contest between the widow and the heirs of the deceased husband and is in no way applicable to the present case which is a contest between the surviving spouse and a mortgage creditor. Harrell v. Crow, supra.
For the reasons assigned, the judgment of the district court denying intervenor's claim to a homestead exemption is reversed and judgment is hereby rendered as follows:
It is ordered, adjudged and decreed, that there be judgment in favor of intervenor, Mary W. Carr, and against plaintiff, Ramon Barlow, recognizing and sustaining intervenor's claim to a homestead exemption under the provisions of Louisiana Constitution Article XI, in preference and priority over the claims asserted by plaintiff in this action, as to the following described property, to-wit:
Lot One (1) of Block Thirty-eight (38) of the Hamley & Millikin Addition to the Town of Lake Providence (formerly Town of Providence), Louisiana, and;
Lots Two (2) and Three (3) of Block Thirty-eight (38) of the Hamley & Millikin Addition to the Town of Lake Providence (formerly Town of Providence), Louisiana.
It is further ordered, adjudged and decreed, that the sheriff's sale held October 10, 1973, by which the above described property was sold to Captan Jack Wyly be and it is hereby declared null and void;

*728 It is further ordered, adjudged and decreed, that intervenor shall be entitled to be paid the sum of $4,000 out of the proceeds of any sheriff's sale of the said property if such sale realizes more than that sum; if any such sale does not realize more than that sum, over and above all costs and expenses, said sale shall be null and void.
It is further ordered, adjudged and decreed, that all costs relating to the intervention, the sheriff's sale annulled hereby, and this appeal are assessed to the plaintiff-appellee.
It is further ordered, adjudged and decreed, that this cause be remanded to the Sixth Judicial District Court in and for East Carroll Parish, Louisiana, for such further proceedings as may be appropriate in accordance with this judgment and in accordance with law.
Reversed, rendered and remanded.