496 So.2d 568 (1986)
In the Matter of Aimee ANDERSON.
Christine Anderson POLLOCK
v.
Robert RYKERS.
No. 86 CA 0180.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*569 Michael C. Winters, New Orleans, for plaintiff, appellee.
Henry Hoppe, III, Slidell, for defendant, appellant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
In 1975 a daughter was born to Robert Rykers (Rykers) and Susan Alford in Sydney, Australia. Although the child was born out of wedlock, she was acknowledged by both parents by registration of her birth in Australia under the name of Tasha Rykers.[1] Two and one-half years later the child and her mother secretly left Australia, never to return. Rykers spent seven years and approximately $100,000.00 sailing around the world on his 64-foot yacht SUROJA searching for his daughter. In 1984 he finally located her in Slidell, Louisiana, where she was living with her mother, who had changed her name to Christine Anderson (Anderson), and her mother's husband, Barry Pollock (Pollock). This custody battle ensued.
The trial court awarded tutorship and custody of the child, whose name had been changed to Aimee Anderson (Aimee), to her mother and undertutorship to Pollock. The court also enjoined Rykers from removing the child from St. Tammany Parish. The issue of visitation was not raised prior to trial. Thus, the trial court declined to rule on that issue and advised Rykers to file a rule for visitation. From this judgment Rykers appeals.
Aimee, who is now 11 years old, lives with Anderson and Pollock in a modern brick home in Slidell, Louisiana. Pollock testified that he loves Aimee and treats her as his own child. Anderson, a nurse, and Pollock, a psychologist, have a joint income of approximately $50,000.00. Aimee attends public school in Slidell where she is an honor roll student. She has been raised in the Baptist religion; she regularly attends church and Sunday school with her parents and is involved in many church activities. The trial judge, who interviewed Aimee in chambers, found her to be well adjusted.
Rykers is a Dutch citizen and a resident of Australia. He lives aboard his yacht with his 22-year-old son from a previous marriage. His mother, brother and 20-year-old daughter live in a house he built on sixty acres of ocean-front property in Cape Tribulation, Australia. His son testified that Rykers' net worth is approximately $1,000,000.00. He follows no organized religion, although he believes in a supreme being and attempts to live his life by moral precepts which include the Ten Commandments. His views on nutrition and medical care are rather unorthodox; he is a strict vegetarian who condemns the use of antibiotics, blood transfusions from strangers and surgery other than in life-threatening situations. He believes in formal education only in a "proper" school where a vegetarian diet is followed.[2] He testified that if awarded custody he would take Aimee to Australia and raise her according to his beliefs.
*570 Rykers contends that the trial judge was "irrevocably biased" against him and should have recused himself. Rykers did not file a motion for recusal because he was aware that no statutory grounds for recusal existed. He contends, however, that the judge should have recused himself "in the interests of justice." Rykers' argument is completely unfounded. A post-trial request for recusation of the trial judge is improper where a party has failed to file a written motion as required by LSA-C.C.P. art. 154. Ray v. Bird & Son, 323 So.2d 904, 907 (La.App. 2d Cir.1975); McNeill v. Continental Cas. Co., 244 So.2d 693, 698 (La.App. 4th Cir.1971). Furthermore, a judge cannot be recused, nor can he recuse himself, for any reasons other than those specifically enumerated in LSA-C.C.P. art. 151 and 152. Shreveport Long Leaf Lumber Co. v. Jones, 188 La. 519, 177 So. 593, 596 (1937); Love v. Baden, 478 So.2d 1008, 1011 (La.App. 3d Cir.1985).
Rykers further contends that the trial court erred in awarding sole custody to Anderson. This contention is based primarily on counsel's argument, unsupported by citation of authority, that the principles of the Uniform Custody Jurisdiction Law (UCJL), LSA-R.S. 13:1700-1722, require the court to consider the facts as they stood in 1977, before Anderson left Australia with Aimee, rather than the circumstances as of the time of trial.[3]
The UCJL, as its title denotes, provides guidelines for the exercise of custody jurisdiction. It was not intended to alter substantive Louisiana law governing the award of custody and tutorship. See The Work of the Louisiana Legislature for the 1978 Regular SessionA Student SymposiumUniform Child Custody Jurisdiction Act, 39 La.L.Rev. 107 (1978). Louisiana law relative to the award of custody and tutorship of illegitimate children acknowledged by both parents is set forth in the Louisiana Civil Code. Article 245 provides that when both parents seek custody, custody shall be awarded in accordance with article 146. The best interest of the child standard is utilized in article 146, with a presumption that joint custody is in the child's best interest. That presumption may be rebutted, however, after consideration of evidence relative to eleven enumerated factors and "any other factor considered by the court to be relevant." Tutorship of the child is governed by article 256(C), which provides for an award of custody to the one parent by whose care the best interests of the child will be served. If joint custody is awarded, co-tutorship of right belongs to both parents.
Several of the factors enumerated in article 146 are evenly balanced between Rykers and Anderson. Both parents obviously love Aimee and are capable of providing for her material needs. Both are capable of giving Aimee love, affection and guidance and are mentally, physically and morally[4] fit to raise the child. However, other factors weigh heavily in favor of Anderson and against joint custody. These include: (1) the disposition to continue the education and raising of the child in her religion; (2) the length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity; (3) the home, school and community record of the child; and (4) the distance between the respective residences of the parties.
The Louisiana Supreme Court has identified as another factor which may rebut the presumption in favor of joint custody the ability of the parents to agree and cooperate on essential aspects of the child's life *571 such as education and discipline. In Turner v. Turner, 455 So.2d 1374, 1380 (La.1984), the court held that where the parents "are of such divergent views and lead such different lives" they are unable to settle their differences amicably or to insulate the children from their battles, joint custody is not in the best interest of the child. See also Dominick v. Dominick, 470 So.2d 314 (La.App. 5th Cir.1985); Goldman v. Logue, 461 So.2d 469 (La.App. 5th Cir.1984).
The trial court considered these factors and found that Aimee's best interest would be served by an award of sole custody and tutorship to Anderson. The trial judge's decision in custody matters is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Fusilier v. Fusilier, 464 So.2d 1068 (La.App. 1st Cir.1985). We find no abuse of discretion in this case.
Finally, Ryker assigns as error two issues which arose after this appeal was taken: the revocation of his right to proceed in forma pauperis and the restriction of his visitation with Aimee. An appellate court "can consider and dispose of [a] case only in the condition in which it was when the judgment appealed from was rendered." Jefferson v. Herold, 144 La. 1064, 81 So. 714, 717 (1919). Common sense and the orderly process of appeal demand that a party be heard only on issues included in the trial court's written judgment. The issues of Rykers' pauper status and visitation are beyond the scope of this appeal and cannot be considered by this court.
For the foregoing reasons, the judgment of the trial court is affirmed at Rykers' costs.
AFFIRMED.
NOTES
[1] Louisiana Civil Code article 203 provides that acknowledgement of an illegitimate child may be made in the registering of the birth or baptism of such child.
[2] His two older children were educated at home by friends and family because there are no "proper" schools near his home in Australia.
[3] Rykers contends that to do otherwise would be to reward Anderson for conduct termed "reprehensible" by the UCJL. See LSA-R.S. 13:1707.
[4] In an attempt to show Anderson's lack of moral fitness, Rykers introduced evidence that she entered into a sham marriage to obtain permanent-resident status in New Zealand and lived with a series of men before moving onto Rykers' yacht in 1972. However, under the "reformation rule" established by Louisiana jurisprudence, a parent will not be penalized for past immoral conduct if he has "reformed" by ceasing the conduct. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603, 606 (1971); Wickboldt v. Wickboldt, 448 So.2d 254 (La.App. 1st Cir.1984).